UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAIL HINTERBERGER, et al.,

               Plaintiffs,

    v.

                                          **DECISION AND ORDER**
                                             08-CV-380S

CATHOLIC HEALTH, et al.,

               Defendants.


# I.  INTRODUCTION

Presently, before this Court is Defendants' Motion to Dismiss Plaintiffs' New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA") claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 86).  Specifically, Defendants argue that Plaintiffs' claims should be dismissed because: (1) Plaintiffs' allegations fail to state individual claims under the FLSA or the NYLL; (2) Plaintiffs' NYLL claims are preempted by the Labor Management Relations Act; (3) Plaintiffs' FLSA claims are precluded by the Labor Management Relations Act; and (4) Plaintiffs' class action claims, as currently pled, violate NYCPLR §901(b).  For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

### A.      Facts

Plaintiffs are a group of hourly-paid, Catholic Health employees. (Docket No.1, ¶¶ 1, 8, 72).   The group is believed to be over 50 employees. (Id., ¶ 7).   Plaintiffs are employed by Defendants, Catholic Health.[1]

Plaintiffs allege that Defendants have not properly calculated Plaintiffs' compensable hours and therefore Plaintiffs have not been compensated for all hours that they worked. (Docket No. 1, ¶¶ 72, 73 79, 90).   Specifically, Plaintiffs contend that Defendants "maintain at least three policies which deprive employees compensation for time worked." (Docket No. 103).   These policies are: (1) Defendants' "Break Deduction Policy," which allegedly deducts half an hour of time from each employee's paycheck for a meal-break, regardless of whether the employee actually takes the break (Docket No. 1, ¶¶ 73, 76); (2) the "Unpaid Preliminary and Postliminary Work Policy," which allegedly permits employees to perform work before and after their shifts for which they receive no compensation (Id., ¶¶ 73, 79); and (3) the "Unpaid Training Policy," which allegedly permits employees to attend training sessions without receiving compensation. (Id., ¶¶ 73, 80). Plaintiffs also allege that, but for the miscalculations in compensable work time allegedly

---

[1]Defendants, "Catholic Health," are all related organizations with common membership, governing bodies, trustees, and officers such as: Catholic Health System, Inc., Joseph McDonald, Michael Moley, Chestnut Ridge Medical Supplies Inc., Catholic Health System Program of All-Inclusive Care for the Elderly, Inc., Catholic Health System Continuing Care Foundation, Kenmore Mercy Hospital, McAuley-Seton Home Care Corporation, Mercy Hospital of Buffalo, Nazareth Home of the Franciscan Sisters of the Immaculate Conception, Niagara Homemaker Services, Inc., Sisters of Charity Hospital of Buffalo, NY, St. Elizabeth's Home of Lancaster, New York, St. Francis Geriatric and Healthcare Services, Inc., St. Francis Home of Williamsville, Inc., St. Joseph Hospital of Cheektowaga, New York, St. Joseph's Manor of Olean, NY, St. Vincent's Home for the Aged, St. Clare Manor of Lockport, New York, St. Luke Manor of Batavia, N.Y., Our Lady Victory Renaissance Corporation, Chestnut Ridge Family Practice, PLLC, and St. Mary's Manor  (hereinafter "Defendants"). (Docket No. 1, ¶14).

caused by such policies, "the time spent working through the breaks, performing work before and/or after their shifts, and/or training, should have been calculated at premium overtime rates." (Id., ¶ 90).

**B.    Procedural History**

Plaintiffs commenced this case on May 22, 2008, by filing a Complaint in the United States District Court for the Western District of New York. (Docket No. 1).  Plaintiffs originally alleged thirteen claims.  However, Plaintiffs voluntarily dismissed ten of their thirteen claims, leaving the NYLL, FLSA, and estoppel claims. (Docket No. 101).  In sum, Plaintiffs currently allege that Defendants' failure to pay Plaintiffs for all hours worked and overtime violates the NYLL and the FLSA, and that Defendants are estopped from claiming any statute of limitations defense. (Id., ¶¶12, 91, 129, 131).  On July 1, 2008, Defendants filed a Motion to Dismiss Plaintiffs' Complaint in its entirety pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 86).  Presently, before the Court is Defendants' Motion to Dismiss.

### III. DISCUSSION AND ANALYSIS

**A.    Defendants' Motion to Dismiss Plaintiffs' NYLL and FLSA claims pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.**

Defendants argue that Plaintiffs' NYLL and FLSA claims against all Defendants should be dismissed pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 86).  According to Defendants, Plaintiffs' Complaint "hardly puts Defendants on notice as to the grounds upon which Plaintiffs' individual claims are based." (Docket No. 87).  Defendants argue that Plaintiffs do "little more than allege, in wholly conclusory fashion, that Defendants violated the law." (Docket No. 125).  Arguing that the

Complaint does not plead "any unique, useful, or identifying facts," (Docket No. 125), such as when Plaintiffs performed off-the-clock work or when Plaintiffs requested and were denied overtime, (Id.), Defendants allege that they are "simply left guessing." (Id.)  As a result, Defendants move to dismiss Plaintiffs' NYLL and FLSA claims for failure to comply with Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 8 of the Federal Rules of Civil Procedure does not require heightened fact pleading, but merely requires the plaintiff to "give the defendant fair *notice* of [plaintiff's] claim and the *grounds upon which it rests*." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (emphasis added).  A complaint may be dismissed pursuant to Rule 12(b)(6) for non-compliance with Rule 8. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (applying abuse of discretion standard when claim was dismissed under Rule 12(b)(6) because the reason for dismissal was failure to satisfy the pleading standard of Rule 8).

In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are viewed in a light most favorable to the plaintiffs. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  However, the factual allegations contained in the complaint must not be "conclusory allegations or legal conclusions masquerading as factual conclusions." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  In the specific context of an FLSA claim, "where a plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked, for which wages were

not received." <u>Zhong v. August August Corp.</u>, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007).[2]

Plaintiffs satisfy the notice pleading requirements of Rule 8. First, Defendants have notice of Plaintiffs' legal claims. Since the complaint continually references the NYLL and the FLSA, Defendants are aware, or at least should be aware, of Plaintiffs' legal claims. Second, Plaintiffs plead the factual grounds supporting their claims by identifying three specific policies/practices of Defendants. First, Plaintiffs allege that they are a class of Catholic employees subject to Catholic's break deduction policy, (Docket No. 1, ¶73), which automatically deducts 30 minutes from their daily paycheck (<u>Id.</u>), despite Plaintiffs continued performance of work during this unpaid period. (<u>Id.</u>) Second, Plaintiffs allege that they worked before and after their scheduled shifts, (<u>Id.</u>), and as a result, performed compensable work without compensation. (<u>Id.</u> ¶¶ 79 & 89). Third, Plaintiffs allege that they "attend compensable training sessions, but Catholic fails to pay employees for their attendance at such training." (<u>Id.</u> ¶¶ 80 & 89). Additionally, Plaintiffs allege that but for the policies' miscalculations, which neither quantified the alleged work time in question nor compensated Plaintiffs for such time, Plaintiffs' actual work hours exceeded forty hours per week, and therefore Plaintiffs are entitled to compensation at the overtime rate. (<u>Id.</u> ¶90).

Defendants cite to two decisions, from this Court, in support of their argument that Plaintiffs fail to satisfy the pleading obligations of Fed.R.Civ.P. 8(a). See <u>Vossler v.</u>

---

[2] In their briefing, both parties focus on stating a claim under the FLSA, as opposed to the NYLL. (Dockets No. 87 & 103). However, "to establish an FLSA claim, plaintiff must prove that: (1) he was an employee who was eligible for overtime (i.e., that he was not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated. [] The relevant portions of New York Labor Law do not diverge from the FLSA: hence, although the [] analysis makes specific reference to federal law, it applies equally to [NYLL] state law claims." <u>Whalen v. J.P. Morgan Chase & Co.</u>, 569 F.Supp.2d 327, 329-330 (W.D.N.Y. 2008).

Phasecom America, Inc., 04-CV-128S, 2004 U.S. Dist. LEXIS 29156 (W.D.N.Y July 19, 2004) (Skretny, J.); Curto v. Bender, 04-CV-26S, 2005 U.S. Dist. LEXIS 6236, *3 (W.D.N.Y. March 28, 2005) (Skretny, J.). In Vossler, the plaintiff, in a complaint less than 3 pages, alleged a sexual harassment claim. Vossler, 2005 U.S. Dist. LEXIS 29156, *2. The complaint merely stated, "that beginning in April 2001, plaintiff [] was sexually harassed by a co-worker employed by the defendant." Id. Similarly, in Curto, the plaintiff alleged, *inter alia*, a section 1985 claim–conspiracy to interfere with civil rights. In pleading the existence of a conspiracy, the plaintiff alleged only that the defendants "spoke to one another." Curto, 2005 U.S. Dist. LEXIS 6236, *39. Further, in support of the civil rights (equal protection) claim, the plaintiff alleged, without comparing herself to any other specific individuals, "I was treated less favorably than other citizens complaints." Id. at 40. This Court dismissed the plaintiff's complaint because "a complaint that does not identify the basis upon which purported discrimination occurred does not give a defendant fair notice of [the claim]. Id. Additionally, the complaint contained only "conclusory allegations, devoid of any supporting facts." Id.

The case at bar is distinguishable from the foregoing decisions because those cases were devoid of any factual background. Specifically, unlike the plaintiffs in Vossler and Curto, Plaintiffs in this case go beyond mere identification of their legal claims and allege three specific, underlying factual bases that support their legal claims, and do so in a complaint that exceeds 24 pages. Furthermore, although Plaintiffs in this case do not allege differential treatment, Plaintiffs satisfy the notice pleading standard because they offer specific allegations in support of their legal claims, as opposed to conclusorily stating their claim, distinguishing this case from Curto.

6

Plaintiffs also satisfy the pleading obligations for alleging a minimum and overtime wage claim under the FLSA.  The cases cited by Defendants in support of their argument to the contrary are easily distinguishable. See Zhong, 498 F.Supp.2d at 628; Acosta v. The Yale Club of New York City, 94-CV-888, 1995 U.S. Dist. LEXIS 14881, *11 (S.D.N.Y. October 5, 1995); EEOC v UBS Brinson, Inc., 02-CV-3745, 2003 WL 133235, *6 (S.D.N.Y. January 15, 2003).  In Zhong, the plaintiff alleged that he was denied overtime compensation in violation of the FLSA.  The Court dismissed plaintiff's complaint because the plaintiff "merely alleged that he worked 'beyond 40 hours per week'," yet the pleadings demonstrated that the plaintiff only worked 20 hours per week. Zhong, 498 F.Supp.2d at 630.  After noting the troubling contradiction, the Court held that, "simply stating that a plaintiff was not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA." Id.  Similarly, in Acosta, the Court dismissed the plaintiffs' complaint because the complaint did not "sufficiently allege a violation of Section 7 of the FLSA." 1995 U.S. Dist. LEXIS 14881, *11.  The Court ruled that the plaintiffs' allegations "amount[ed] to nothing more than a hodgepodge of individual instances where waiters were not paid for extra hours worked on a given day." Id.  Furthermore, the plaintiffs never even alleged that they worked more than 40 hours per week.  Lastly, in UBS Brinson, the Court held that the complaint did not satisfy the notice-pleading requirements because the plaintiffs did not identify a specific employment practice giving rise to their claim. 2003 WL,133235, *6.

Unlike the plaintiffs in Acosta, Plaintiffs in the case at bar explicitly allege that they worked more than 40 hours per week. (Docket No. 1, ¶12).  Further, Plaintiffs do not allege a variety of individual, isolated instances where they stayed late, but rather contend that three sustained policies, which were executed over a specific period of time, denied them

overtime compensation. (Id., ¶¶ 73, 76, 79, 80).  Unlike Zhong, Plaintiffs' allegations in the case at bar do not contain a fatal contradiction between their legal claim and their pleadings. Lastly, unlike UBS Brinson, Plaintiffs do not fail to identify a specific employment practice giving rise to their claim since they identify three such practices. (Id.)

Defendants also argue that, "Plaintiffs' inadequate pleading as to the factual basis for their claims against the two individual Defendants, Joseph McDonald and Michael Moley, also fails to provide these Defendants with adequate notice of the acts that purportedly constitute violations of the law." (Docket No. 87).  Plaintiffs contend that McDonald and Moley are individually liable as employers under the FLSA given their authoritative roles at Catholic. (Docket No. 103).

Plaintiffs allege valid wage claims against the individual Defendants.  First, individuals with significant decision-making authority over a company may be liable as employers under the FLSA. Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 140 (2d Cir. 1999).  Plaintiffs allege, and Defendants do not dispute, that McDonald and Moley "have the authority to make decisions concerning defendants' operations, including functions related to employment human resources, training, payroll, and benefits." (Docket No. 103; Docket No. 1, ¶¶ 26, 33, 37, 38, 39, 49, 56, 61, 62, 68).  Second, since this Court finds, for the reasons stated above, that Plaintiffs' Complaint satisfies the notice pleading requirements of Rule 8, Defendants' contention that "Plaintiffs inadequate pleading [] also fails to provide the [individual] Defendants with adequate notice," is rejected. (Docket No. 87).

Accordingly, Defendants' Motion to Dismiss Plaintiffs' FLSA and NYLL claims against all Defendants on the grounds that Plaintiffs' NYLL and FLSA claims fail under

Rules 8 and 12 is denied for the foregoing reasons.

**B.     NYLL Preemption Under Section 301 of the Labor Management Relations Act (LMRA)**

Defendants argue that Plaintiffs' NYLL claim is preempted by section 301 of the LMRA and therefore must be dismissed. (Docket No. 87).   Defendants contend that Plaintiffs' claims are preempted by federal labor law since their claims are substantially dependent on the meaning, significance, and review of the Collective Bargaining Agreement ("CBA"). (Id.).  Defendants also argue that the provisions in the CBA will be an important part of Defendants' NYLL defenses. (Id.).   Additionally, Defendants claim that Plaintiffs are directly challenging the legality of the CBA's meal policy. (Id.).   In response, Plaintiffs contend that their NYLL claim sets forth an independent legal right conferred upon them by state law, which does not rest upon any interpretation of the CBA, and therefore is not preempted. (Docket No. 103).   Moreover, Plaintiffs maintain that they are not challenging any provisions of the CBA.   For the reasons discussed below, this Court finds that Plaintiffs' NYLL claim is partially preempted and accordingly, Defendants' Motion to Dismiss is granted in part and denied in part.

Section 301 of the LMRA provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce [] may be brought in any district court of the United States having jurisdiction of the parties." 21 U.S.C. § 185(a).   Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410

(1988).  "Section 301 [preempts state-law] claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent upon an analysis of a collective bargaining agreement'." <u>Id.</u> at 410 (quoting <u>Electrical Workers v. Hechler</u>, 481 U.S. 851, 859, n. 3, 107 S.Ct. 2162, n.3, 95 L.Ed.2d 791 (1989)).  Any claim that challenges a provision in a CBA, must be brought under section 301. <u>Allis-Chalmers</u>, 471 U.S. at 210; <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 (2d Cir. 2003) ("plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA.").

But section 301 does not always preempt state claims.  When a claim derives from an independent, substantive provision of state law, preemption has no application. <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) ("In <u>Lueck</u>, and in <u>Lingle</u>, we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement [] that decides whether a state cause of action may go forward."); <u>see also</u> <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) ("Clearly, §301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law.").  As long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is 'independent' of the agreement for §301 purposes." <u>Mack v. Metro-North Commuter R.R.</u>, 876 F.Supp. 490, 492 (S.D.N.Y. 1994) (citing <u>Norris</u>, 512 U.S. at 492).  Even if resolution of a state-law claim, "involves attention to the same factual considerations as the contractual determination [] such parallelism [does not mandate preemption]." <u>Lingle</u>, 486 U.S. at 408.

10

Lastly, a defendant's reliance on the CBA is not enough to "inject a federal question into an action that asserts what is plainly a state-law claim." Caterpillar Inc. v. Williams, 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

In this case, Plaintiffs argue, without citing to any NYLL provision,[3] that "[P]laintiffs' [] NYLL claims are legally premised on the statute's independent legal requirement that an employer pay for all time it suffer or permits an employee to work, including time during working lunches." (Docket No. 103). Defendants do not dispute that the NYLL requires an employer to pay an employee for all hours worked, including overtime, but they contend that Plaintiffs' factual allegations, which give rise to their NYLL claims, are substantially dependent upon a review and interpretation of the CBA. Specifically, Defendants argue that, "Plaintiffs' claims for unpaid compensable time worked during meal periods, before and after scheduled shifts, and during training are expressly governed by the CBAs." (Docket No. 87). Therefore, Defendants maintain that Plaintiffs' NYLL claims for unpaid wages and overtime are ultimately dependent upon a review and interpretation of Plaintiffs' work schedules as set forth in the CBAs. (Id.) With the exception of unpaid working lunch periods, Plaintiffs do not respond to Defendants' more specific argument, but instead broadly state that their NYLL claims are "entirely independent of [the CBA]." (Docket No.

---

[3]In their Memo in Opposition to Defendants' Motion to Dismiss, Plaintiffs, in a footnote, cite NYLL § 193 for the proposition that "defendants must pay all wages due an employee, which encompasses wages due under the terms of the FLSA." (Docket No. 103). There are two problems with this specious assertion. First, section 193 does not stand for the principle that an employer must pay an employee all wages due, but rather prohibits an employer from deducting wages from an employee's paycheck. Second, the NYLL and the FLSA do admittedly contain a number of similarities, and in many instances, as Plaintiffs note, the statutes are interpreted consistently. However, although overtime claims may be established referring to the FLSA because "the relevant portions of the NYLL do not diverge from the requirements of the FLSA", Whalen, 569 F.Supp.2d at 330, Plaintiffs' claims in this case are much more specific than pleading a general overtime claim, rendering the general notion that the NYLL and the FLSA are largely parallel unavailing.

103).

Plaintiffs' allegation that they worked during their unpaid lunch period sets forth an independent statutory right, arising under section 162 of the NYLL.[4]  As a result, any provisions in the CBA discussing meal periods are irrelevant to Plaintiffs' claim. See Consolidated Rail Corp. v. Hudacs, 223 A.D.2d 289, 292 (N.Y.A.D. 3 Dept. 1996) ("Moreover, even accepting petitioner's assertion that due to the course of conduct between and past practices of the parties, the CBA implicitly addressed the meal period issue, we nonetheless would conclude that the RLA (Railway Labor Act) does not preempt Labor Law §162. It has long been the law that the arbitral mechanism of the RLA does not preempt state laws that are independent of collective bargaining agreements."). Moreover, although the CBA does contain provisions on meal breaks, these provisions cannot preempt independent statutory rights for the reasons mentioned above, they do not purport to waive any statutory right,[5] and even if Plaintiffs' NYLL claims require the same analysis as may be required if there was a violation of the CBA, such "parallelism" does not mandate preemption. Lingle, 486 U.S. at 408.

Defendants' argument that Plaintiffs are challenging a provision in the CBA – the meal provision – is also rejected.  First, Plaintiffs maintain that their references to the CBA

---

[4]"Bona fide meal periods, which are generally of at least 30 minutes' duration, are mandated by [New York] state law." 13A N.Y. Prac., Employment Law in New York § 7:45 (citing NY LAB. LAW § 162).

[5] Although the provisions of Labor Law §162 may be waived by the CBA, so long as the legislative purpose of the statute is not contravened, Hudacs, 223 A.D.2d at 293, the parties never discuss waiver. See Wright v. Universal Maritime Service Corp., 525 U.S. 70, 82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (statutory waivers require a "clear and unmistakable waiver" of those rights).  There is neither a clear and unmistakable waiver of Labor Law §162 in the CBA nor any discussion by the parties on this issue whatsoever.

12

in the Complaint related to their now withdrawn breach of contract claims, not their statutory claims. (Docket No. 103).  Given the posture of this case, this Court is required to draw all reasonable inferences in Plaintiffs' favor.  As a result, it is not unreasonable for this Court to accept Plaintiffs' argument that any reference to the CBA is a result of the withdrawn breach of contract claim.  Secondly, Plaintiffs contend that the meal policy is not even a CBA provision, but rather an "internal management decision to program a payroll system to dock employees' pay." (Id.)  This argument is strengthened by the fact that Plaintiffs are not re-characterizing their claim for the first time in opposition to Defendants' motion, but initially assert this allegation in the Complaint. (Docket No. 1, ¶ 76) ("In particular, the Break Deduction Policy is an automatic payroll policy, practice, and/or system which automatically makes deductions from Class Members pay."); Cf. Vera, 335 F.3d at 116 (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939) ("Although plaintiff now tries to disavow or at least minimize this allegation, we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed.")).

Despite the statutory coverage addressing meal periods via NYLL § 162, the NYLL does not cover Plaintiffs' allegations that they worked before and/or after their shifts and attended training sessions without pay.  In other words, there is no state-based, statutory right to be paid for such hours.  Therefore, to the extent that Plaintiffs' NYLL claims – for unpaid wages and overtime – rest on allegations of unpaid preliminary and postliminary work, and unpaid training time, Plaintiffs' NYLL claims are not "independent" of the CBA. See Lingle, 486 U.S. at 410; Metro North Commuter, 876 F.Supp. at 492.  As a result, Plaintiffs' NYLL claims based on such allegations will require substantial interpretation of

13

the CBA and are therefore preempted.

Lastly, in support of their preemption argument, Defendants claim that the CBA will be an important part of their NYLL defenses. (Docket No. 87).  However, this argument is rejected since Plaintiff is the "master of the complaint" and any anticipated defense by Defendants is not enough to inject a federal question into what is plainly a state-law claim. Caterpillar, 482 U.S. at 399.

Accordingly, for the foregoing reasons, Plaintiffs' NYLL claims for wages and overtime based on allegations of unpaid working lunches are not preempted because the NYLL confers upon Plaintiffs an independent statutory right to be paid for time spent working through a meal period.  Conversely, Plaintiffs' NYLL claims for wages and overtime based on Plaintiffs' allegations of uncompensated work before and/or after their shifts and also for uncompensated training time *are* preempted because they lack an independent statutory basis.


**C.     FLSA Preclusion under Section 301 of the LMRA**

Similar to Defendants' arguments for preemption discussed above, Defendants argue that the adjudication of Plaintiffs' FLSA claims will require interpretation of the CBAs. Therefore, Defendants contend that Plaintiffs' FLSA claims are *precluded* under Section 301 of the LMRA, and the grievance and arbitration process outlined in the CBAs, rather than this Court, is the appropriate forum. (Docket No. 87).  Plaintiffs again argue, without citing to any provisions, that the terms of the CBA are irrelevant to their FLSA claim because the FLSA confers independent statutory rights that cannot be collectively

14

bargained away. (Docket No. 103).  For the reasons discussed below, the Court finds that Plaintiffs' FLSA claims are not precluded.

Employees' rights to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement. <u>Andrako v. U.S. Steel Corp.</u>, 2008 WL 2020176, *4 (W.D.Pa., May 8, 2008) (citing <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 745 (1981). FLSA's "enforcement scheme grants individual employees broad access to the courts [] and no exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." <u>Barrentine</u>, 450 U.S. at 740; <u>McDonald v. City of West Branch, Mich.</u>, 466 U.S. 284, 289, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); <u>see</u> <u>also</u> <u>Tran v. Tran</u>, 54 F.3d 115 (2d Cir. 1995) (reversing lower court's holding that the plaintiff was required to exhaust his arbitral remedy prior to filing his FLSA claims).  As the United States Supreme Court stated:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement.  By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress.  The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.  And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

<u>Barrentine</u>, 450 U.S. at 745-746 (citing <u>Alexander v. Gardener-Denver Co.</u>, 415 U.S. 36, 49-50 (1974)).

In this case, the FLSA confers upon Plaintiffs independent statutory rights for all of the factual predicates asserted in support of their FLSA claims.  Specifically, the FLSA requires that employees be completely relieved from their duties under an automatic meal deduction policy. 29  C.F.R.  §785.19;  <u>see</u>  <u>also</u>  <u>Reich  v.  Southern  New  England</u>

15

Telecommunications Corp., 121 F.3d 58, 63 (2d Cir. 1997) ("Bona fide meal periods are not worktime. [] The employee must be completely relieved from duty for the purposes of eating regular meals. [] The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."). Plaintiffs' allegation that a half-hour was automatically deducted for a meal break, despite Plaintiffs' alleged performance of work through such breaks, (Docket No. 1, ¶ 73), states a claim under the FLSA as set forth in the interpretive regulations promulgated by the Department of Labor under its FLSA enforcement authority. 29 C.F.R. §785.19. Additionally, the FLSA requires that individuals be paid for any time spent working before and/or after their shifts. 29 C.F.R. §785.13; see also Chao v. Gotham Registry, Inc., 514 F.3d 280, 287-288 (2d Cir. 2008) ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work... An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance."). As a result, Plaintiffs' allegation that "Catholic suffered or permitted [them] to perform work before and/or after their scheduled shift but [they] were not paid for performing such work," (Docket No. 1, ¶ 73) asserts an independent FLSA violation that also does not rest upon any interpretation of the CBA. Lastly, attendance at training programs is generally counted as working time. 29 C.F.R. 785.27; see also Seever v. Carrols Corp., 528 F.Supp.2d 159, 167 (W.D.N.Y. 2007) ("Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable."). Since Plaintiffs allege that, "Catholic suffered or permitted (employees) to attend compensable training but [they] did not receive compensation for such training," (Docket No. 1, ¶ 73), Plaintiffs' FLSA claim for unpaid

wages and overtime based on non-payment for training time is also based upon an independent statutory right. Accordingly, Defendants' argument that Plaintiffs' FLSA claims are substantially dependent upon an interpretation of the CBA and are therefore precluded by the LMRA is rejected because Plaintiffs' claims are independent, statutorily-conferred rights, distinct from any contractual rights granted under the CBA.

Defendants further argue that Plaintiffs, "specifically invoke the CBA [and] "allege that Defendants violated certain provisions of the CBA." (Docket No. 87). As a result, Defendants argue that <u>Barrentine</u> and <u>Tran</u> are distinguishable. (Docket No. 87). Moreover, Defendants cite to a Third Circuit case, which required the plaintiff to resolve their FLSA claims pursuant to the procedures contemplated by the LMRA because their FLSA claim rested on an interpretation of the CBA. <u>Vadino v. A Valey Engineers</u>, 903 F.2d 253, 266 (3d Cir. 1990). In response, Plaintiffs note that they originally pled a breach of contract claim and argue that any reference in their Complaint to the CBA relates to the withdrawn breach of contract claim. (Docket No. 103).

Drawing all reasonable inferences in Plaintiffs' favor and viewing the pleadings in the light most favorable to them, this Court accepts Plaintiffs' argument that any reference and/or challenge to the CBA related to the withdrawn breach of contract claim. As a result, Plaintiffs' FLSA claim is neither based on an interpretation of the CBA nor amounts to a challenge of it, but is rather statutorily based. Accordingly, <u>Vadino</u> is distinguishable. See <u>Andrako</u>, 2008 WL 2020176, *5 ("[T]he instant case, however, is easily distinguishable from <u>Vadino</u>. [] Here, in contrast, Plaintiffs do not suggest anywhere in the Complaint that they are disputing any provision of the CBA. Rather, the Complaint focuses solely on Plaintiffs' alleged statutory right to compensation."). Similarly, since Plaintiffs are not

17

challenging the CBA, Defendants' argument that <u>Barrentine</u> and <u>Tran</u> are both distinguishable is also rejected.

Accordingly, Defendants' Motion to Dismiss on the grounds that Plaintiffs' FLSA claims are precluded by section 301 of the LMRA is denied for the foregoing reasons.

**D.      The Requirements of NYCPLR §901(b)**

In the case at bar, Plaintiffs intend to bring a class action lawsuit.[6]  Although Plaintiffs do not cite to the specific section of the NYLL that they allege Defendants violated, ultimately, Plaintiffs' claim is one for unpaid wages.  Pursuant to New York Labor Law §198(1-a):

> "[A]ny action instituted upon a *wage claim* by an employee [] in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was *willful*, an additional amount as *liquidated damages* equal to twenty-five percent of the total amount of the wages found to be due."

NY LAB LAW § 198 (emphasis added).

Under New York law, any class action lawsuit brought under a statute that "impos[es] a penalty" is prohibited. N.Y. C.P.L.R. §901(b).  Defendants contend that the provision in NYLL §198(1-a) – the provision that awards liquidated damages to an employee, who demonstrates that their employer willfully withheld wages – constitutes a "penalty" within the meaning of C.P.L.R. §901(b).  Defendants note that Plaintiffs allege willful violations, (Docket No. 1, ¶¶ 91, 129, 131), and also that New York courts have

---

[6]Plaintiffs' Motion to extend time to seek Rule 23 certification is pending before this Court. (Docket No. 137).

found the liquidated damages provision of NYLL § 198 to amount to a penalty that is subject to the proscriptions of 901(b). Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 550-551 (N.Y.A.D. 1980), (affirmed, 419 N.E.2d 1079 (N.Y. 1981). As a result, Defendants contend that "Plaintiffs have only two choices: (1) plead a willful violation of the NYLL and thus seek liquidated damages – thereby invoking C.P.L.R. §901(b) and precluding a possibility of a class action; or (2) abandon their allegations of willfulness and, therefore, their claim for liquidated damages." (Docket No. 87). In response, Plaintiffs argue that §901(b) does not even apply and in the alternative, the penalty provision within section 198(1-a) can be waived. (Docket No. 103).

Plaintiffs' first contention, that 901(b) does not apply, is based on the premise that 901(b) is a procedural rule. (Docket No. 103). Plaintiffs argue that, upon adjudicating the NYLL claim, this Court must apply federal procedural rules and not state procedural rules pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, "the bulk of cases to address the applicability of N.Y. C.P.L.R. §901(b) have decided that the statute is substantive and applies with equal force in federal litigation." Leider v. Ralfe, 387 F.Supp.2d 283, 291 (S.D.N.Y. 2005). Accordingly, since 901(b) is a substantive rule, 901(b) applies to the facts of this case pursuant to Erie.

Although 901(b) applies, Plaintiffs can still bring a class action lawsuit under §198(1-a) because the class can – and the class must – waive its claim for liquidated damages. See Klein v. Ryan Beck Holdings, Inc., 06-CV-3460, 2007 WL 2059828, *4 (S.D.N.Y. July 13, 2007) ("Waiver of liquidated damages – far from being a hindrance to adequate representation – is a prerequisite to the bringing of a class action under the applicable provisions of the New York Labor Law."); Smellie v. Mount Sinai Hosp., 03-CV-

0805, 2004 U.S. Dist. LEXIS 24006, *15 (S.D.N.Y. November 24, 2004) ("Courts in this District have held that a class action seeking damages for violations of the wage provisions of New York's Labor Law can be maintained if no liquidated or punitive damages are sought."); Brzychnalski v. Unesco, Inc., 35 F.Supp.2d 351, 353 (S.D.N.Y. 1999) ("Even if plaintiffs cannot seek liquidated damages on a class basis, they may waive that right and still proceed on a class basis with respect to their remaining claims."); Super Glue Corp. v. Avis Rent A Car Sys. Inc., 132 A.D.2d 604, 606, 517 N.Y.S.2d 764 (2d Dep't 1987) ("Although CPLR §901(b) bars a class action to recover a penalty [] imposed by statute [], the named plaintiff in a class action may waive that relief and bring an action for actual damages only.").  Although Defendants argue that Plaintiffs cannot waive their claim for liquidated damages, Defendants cite to authority that prevents the waiver of liquidated damages under the FLSA, *not* the NYLL. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (the right to liquidated damages under the FLSA cannot be waived); Rogers v. City of Troy, N.Y., 148 F.3d 52, 59 (2d Cir. 1998).  Moreover, Defendants acknowledge that both state and federal courts located within this Court's jurisdiction "have permitted class claims under the NYLL where plaintiffs waive liquidated damages." (Docket No. 87).

However, in order to constitute a valid waiver of liquidated damages and proceed with the class action lawsuit, Plaintiffs must give the other class members notice of the right to opt out of the class in order to pursue their own liquidated damages claim. Iglesias-Mendoza et. al. v. LaBelle Farm, Inc., et al., 239 F.R.D. 363, 374 (S.D.N.Y. 2007) ("The court sees no problem with plaintiffs waiving their liquidated damages as long as notice is provided to the Rule 23 class instructing individuals how to opt-out in order to preserve

their claims for liquidated damages.").  This Court will require such notice as this case progresses.

Accordingly, Defendants' Motion to Dismiss on the grounds that Plaintiffs' claim violates 901(b) is denied provided that Plaintiffs waive any claim to liquidated damages and also notify the class of this waiver.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Rules 8 12(b)(6) of the Federal Rules of Civil Procedure is denied in part and granted in part. Specifically, Defendants' Motion to Dismiss Plaintiffs' FLSA and NYLL claims for failure to state individual claims against Defendants is denied.  Additionally, Defendants' Motion to Dismiss Plaintiffs' FLSA claims because they are precluded under section 301 of the LMRA is denied and Defendants' Motion to Dismiss Plaintiffs' NYLL claims because they are prohibited, as currently pled, under NYCPLR § 901(b) is also denied.  However, Defendants' Motion to Dismiss Plaintiffs' NYLL claims because they are preempted under section 301 of the LMRA is granted in part.  Specifically, to the extent that Plaintiffs' NYLL claims rely on unpaid preliminary and postliminary work time as well as unpaid training time, Plaintiffs' NYLL claims are preempted and must be brought under section 301 of the LMRA.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 86)

is GRANTED in part and DENIED in part, consistent with the foregoing Decision and

Order.

SO ORDERED.


Dated:   November 24, 2008
         Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge