UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAIL HINTERBERGER, BEVERLY WEISBECKER,
CYNTHIA WILLIAMS and MARCIA CARROLL,
on behalf of themselves and all other employees similarly situated,

Plaintiffs,

v.

CATHOLIC HEALTH SYSTEMS, INC., et. al.,

Defendants.

**Civil Action No.
08-CV-00380-WMS(F)**

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO AMEND COMPLAINT

Defendants, Catholic Health System, et al. ("Defendants" or "CHS"), submit this memorandum of law in opposition to Plaintiffs' Motion to Amend/Correct the Complaint. Plaintiffs seek to amend the complaint to add back into this case two claims (for misrepresentation and conversion) that they voluntarily dismissed from this action three and one-half years ago. These claims were re-filed by the plaintiffs in New York State Supreme Court, but removed back to the Western District of New York in a new action. In January 2012, this Court granted the defendants' Motion to Dismiss and dismissed, without prejudice, the misrepresentation and conversion claims to the extent that they seek recovery for straight time pay. In dismissing these claims, this Court cited to Plaintiffs' prior voluntary dismissal and specifically refused to grant Plaintiffs leave to replead. The Court's Decision noted that consolidating those claims in this action would run counter to Plaintiffs' "express desires and confer an unjustified benefit."

Defendants now oppose the proposed amendment as futile and dilatory, and further seek to ensure that, if Plaintiffs are granted leave to amend, conditions be imposed so that they are not conferred an "unjustified benefit."

13819997.2

With respect to the misrepresentation claim, the allegations in the proposed Second Amended Complaint are too generalized and conclusory and are subject to dismissal, again, for insufficient pleading.  The allegations in support of the conversion claim are likewise insufficient.  For both the misrepresentation and conversion claims, the proposed amended pleadings continue to assert claims based on overtime pay that this Court held were preempted by the FLSA.  Finally, if leave to amend is granted to any extent, it should be made upon the condition of plaintiffs' payment of Defendants' attorney's fees.

## BACKGROUND FACTS

 On May 22, 2008, Plaintiffs commenced this action by filing a single Complaint alleging thirteen different causes of action.  The original Complaint alleged that Defendants failed to properly pay wages to their employees, for example, for time spent working during meal periods, preliminary and post-liminary work periods, and training sessions.  (See Civil Action No. 08-CV-380, Dk. No. 1).

Plaintiffs' original Complaint contained the following specific claims: (1) violation of the Fair Labor Standards Act ("FLSA"); (2) violation of the New York Labor Law ("NYLL"); (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) conversion; (6) unjust enrichment / restitution; (7) quantum meruit; (8) fraud and deceit; (9) misrepresentation; (10) failure to keep accurate records pursuant to the Employee Retirement Income Security Act ("ERISA"); (11) breach of fiduciary duties pursuant ERISA; (12) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (13) estoppel.

On July 1, 2008, the Defendants filed a Motion to Dismiss pursuant to FRCP 12(b) seeking dismissal of the Original Complaint in its entirety.  In support of that Motion, Defendants filed a complex Memorandum of Law and numerous exhibits addressing each of the

13819997.2

thirteen separate claims that were asserted in the Original Complaint.  (See Civil Action No. 08-CV-380, Dk. No. 86-87).  On August 1, 2008, while the Defendants' Motion to Dismiss was pending, Plaintiffs voluntarily dismissed the majority of the claims asserted in their Original Complaint pursuant to FRCP 41(a)(1), including the misrepresentation and conversion claims that they now seek to add back into this lawsuit.  Specifically, rather than await a ruling from this Court on the pending Rule 12 Motion, Plaintiffs filed a Notice of Voluntary Dismissal of Certain Claims.  (See Civil Action No. 08-CV-380, Dk. No. 101).  In light of the voluntary dismissal, the only claims that remain in this action are the following: (1) claims under the FLSA, (2) claims under the NYLL, and (3) estoppel.  Thus, the Defendants' Motion to Dismiss was mooted as to all arguments for dismissal except those relating to the FLSA, NYLL and estoppel.

**Claims Re-filed in State Court and Removed Back to the WDNY**

On August 6, 2008, Plaintiffs re-filed all of the claims that they voluntarily dismissed from the original federal action in two separate lawsuits in the Supreme Court of New York, Erie County (hereinafter "State Actions").  (Supreme Court Index Nos. 2008-9074 and 2008-9075).  The State Action corresponding to Index No. 2008-9075 included the following common law causes of action: (1) conversion; (2) fraud and deceit; (3) misrepresentation; and (4) estoppel.  Plaintiffs, however, withheld service of the Summonses and Complaints for the two State Court actions until December 3, 2008, just days after this Court issued its ruling on the Rule 12 Motion to Dismiss pending in the present action.  (Civil Action No. 380, Dk. No. 147).  Plaintiffs' obvious intent was to force Defendants to litigate in two separate forums over claims that are virtually identical.

On December 23, 2008, Defendants filed Notices of Removal pursuant to 28 U.S.C. § 1446, removing both State Court actions back to this federal court.  (See Notices of Removal,

Civ. Action Nos. 08-CV-948 and 08-CV-952).  The removed State Action under Index No.

2008-9075 was assigned Civil Action No. 08-CV-948 in the Western District of New York.  In

response, Plaintiffs moved to remand Civil Action No. 08-CV-948 back to State Court.  (See

Civ. Action No. 08-CV-948, Docket No. 8).  Civil Action No. 08-CV-948 included the

misrepresentation and conversion claims that Plaintiffs voluntarily dismissed from this action

and now seek to reassert in their proposed Amended Complaint.

**Dismissal in Civil Action No. 08-CV-948**

Defendants, once again, moved to dismiss all of the claims contained in both removed

actions.  On January 17, 2012, this Court issued a Decision and Order in connection with the

Motions to Dismiss and Plaintiffs' Motion to Remand.  Plaintiffs' Motion to Remand was denied

in its entirety.  (Civil Action No. 08-CV-948, Dk. No. 30).  Plaintiffs' fraud claim was dismissed

with prejudice.  (*Id.*)  Plaintiffs' conversion and misrepresentation claims were dismissed with

prejudice to the extent that they sought to recover payments for overtime on the grounds that

such claims were preempted by the FLSA.  (*Id.*)  The conversion and misrepresentation claims

were dismissed without prejudice to the extent that they sought to recover payments for straight

time or "gap time."  (*Id.*)[1]  This Court refused to allow Plaintiffs' straight time claims for

conversion and misrepresentation to go forward and refused to consolidate the claims with the

present action, citing Plaintiffs' choice to voluntarily dismiss the claims.  Specifically, the Court

held that "[g]iven Plaintiffs' affirmative decision not to pursue their conversion claim in this

forum, consolidation would run counter to their express desire and confer an unjustified benefit."

(*Id.*)

---

[1]     Plaintiffs' estoppel claims were also dismissed, but the Court noted that Plaintiffs could
continue to assert an equitable tolling argument as part of their remaining claims.  (Civil
Action No. 08-CV-948, Dk. No. 30).

The same is true with respect to the voluntarily dismissed misrepresentation claim.  This Court held that "[b]ecause of that voluntary dismissal, Plaintiffs will not be given leave to replead this cause of action at this time."  (*Id.*)  The Court ordered that "should Plaintiffs seek to replead the claims for conversion and/or negligent misrepresentation, they must do so in 08-CV-380, from which they previously voluntarily dismissed the very same claims." (*Id.*)

On February 16, 2012, Plaintiffs moved to amend/correct the complaint to add the voluntarily dismissed claims pursuant to Rule 15(a).  (08-CV-380, Dk. No. 299).  The proposed Second Amended Complaint seeks to add the misrepresentation and conversion claims back into this action.  (*Id.*)  The Proposed Second Amended Complaint also deletes the estoppel claim consistent with Judge Skretny's Decision and Order.  (*Id.*)  In this Motion, Plaintiffs incorrectly suggest that the Court has already granted them leave to replead in its Decision and Order.  (See Plaintiffs' Memorandum of Law, Dk. No. 299, p. 2).  In fact, Plaintiffs were expressly denied permission to replead and were directed to file a motion pursuant to FRCP 15(a)(2) if they wished to reassert those claims in this action.

Defendants oppose the plaintiffs' Motion seeking to reassert the misrepresentation and conversion claims that they voluntarily dismissed.

## ARGUMENT

## POINT I

## THE AMENDMENT IS FUTILE, PREJUDICIAL AND DILATORY

### A.  Standard for Amendment

Rule 15 permits amendments only when: "(1) the party seeking amendment has not unduly delayed, (2) the party seeking amendment is not acting in bad faith or with dilatory motive, (3) the amendment would not cause undue prejudice to the opposing party, and (4) the

amendment is not futile."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); see <u>Xiang Li v.</u>

<u>Morrisville State College</u>, 434 Fed. Appx. 34 (2d Cir. 2011) ("Although Rule 15(a)(2) provides

that leave to amend shall be 'freely give[n] . . . when justice so requires,' justice does not so

require if amendment would be futile").  Here an amendment would be futile, dilatory and

prejudicial.

**B.   The Proposed Amendment is Dilatory, Prejudicial and Otherwise Not in the Interest of Justice.**

Plaintiffs' proposed amendment seeks to add back into this lawsuit claims that were

voluntarily dismissed from this same action by Plaintiffs, on their own accord, solely to avoid

the Court's decision on a pending motion to dismiss.  Through that procedural gamesmanship,

Plaintiffs delayed the resolution of those claims for over three years but ended up in the same

place they would have been if they had not voluntarily dismissed these causes of action from

their original Complaint.  These dilatory actions are evident, have multiplied the litigation, and

forced Defendants and this Court to spend considerable resources in dealing with Plaintiffs'

delay tactics.

Plaintiffs' justification for the voluntary dismissal – that it was done to keep the FLSA

claim "moving forward" – is nonsensical.  Plaintiffs re-filed the claims in state court

immediately after the voluntary dismissal but held off on service for almost 4 months and waited

for the District Court to issue its ruling on the dispositive motion pending at that time.  Those

tactics forced Defendants to redirect their efforts to removing, responding to and once again

seeking to dismiss the claims.  Absent that runaround, the fate of these claims would have been

decided in December 2008, when the Court issued its decision on the motion to dismiss.  Re-

filing the claims in state court also forced Defendants and this Court to review issues of remand

and consolidation years after-the-fact, and rendered all prior efforts made on the original motion

to dismiss futile.  Indeed, Plaintiffs filed two separate actions in state court, segregating certain common law claims (including the misrepresentation and conversion claims) from other claims based on federal law.  The forum shopping aspect of that maneuver is inescapable, as Plaintiffs segregated these claims in a manner that would allow them to argue that this Court should choose not to exercise its jurisdiction over certain common law claims.  How the filing of three separate lawsuits in two different court systems can be described as keeping Plaintiffs' FLSA claims "moving forward" is beyond comprehension.  Other than shopping for a better forum, avoiding the pending motion to dismiss, redirecting the efforts of Defendants and delaying the litigation, the voluntary dismissal of the claims served no purpose.

Defendants' prejudice is obvious, as they have been forced to incur considerable expenses and were denied a timely resolution of these claims because of Plaintiffs' maneuvers, just to end up in the same place the parties would have been in December 2008.  Defendants' efforts have largely been rendered futile because, despite Defendants' motions and this Court's decision, Plaintiffs' perpetuate their meritless allegations.

## C. The Proposed Amendments Lack Merit and are Futile

Leave to amend should not be granted because the proposed amendments are also futile. Despite the guidance contained in this Court's Decision and Order, Plaintiffs (1) fail to allege the misrepresentation claim with sufficient particularity, (2) fail to adequately plead the conversion claim, and (3) continue to make allegations that this Court has already found were preempted by the FLSA.

### 1.  The Misrepresentation Claim Lacks Particularity

The misrepresentation claim was dismissed because it was not pled with the particularity required by Rule 9(b).  The Court held:

> Here, plaintiffs offer insufficient supporting details about "Defendants;' purported misrepresentation. They do not identify which entities, individuals, or agents were responsible for making the purported misrepresentations [...] Moreover, they provide no particulars about the misrepresentations themselves.  There is no attempt to describe what information was concealed, which corporate documents contain misstatements, what those misstatements were and who made them, or which Plaintiff inquired about the break policy and when, how the question was presented, who responded on behalf of which Defendant, and how a statement that break time is not compensable violates the law.. Plaintiffs have not isolated any particular act or representation made by any specific entity or person on any particular date [...].  In short, their allegations are simply too generalized and conclusory to pass muster.

(Decision and Order, 08-cv-948, Docket No. 30, p. 19).

Although Plaintiffs add more allegations to the proposed amendment, the allegations are largely the same broad and generalized allegations referring to "defendants" en masse without any particularity.  For example, Plaintiffs allege that "Catholic misrepresented in its employee manuals and policy manuals to plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of a forty in a work week." (Docket No. 301, Proposed Second Amended Complaint, ¶87).  No manuals are identified, much less to which defendant these manuals belong, and when any such manuals were dated or distributed.

To further demonstrate the generality and broadness of these allegations, the Plaintiffs make the same allegations, almost verbatim, in a separate lawsuit pending before this Court, pertaining to Kaleida Health, which is an entirely different employer with completely different employees, practices and policies. (Compare 08-cv-378, Docket No. 347 with 08-cv-380, Docket No 301).  The allegations in the proposed amendment cannot be satisfactorily "particular" to Catholic when the exact same allegations are made about a totally unrelated employer.

The only more "specific" allegations provided in the proposed amendments refer to statements from a "policy manual" regarding a meal break policy and "corporate documents" regarding a means for employees to record and request payment for time worked during meal breaks.  (Proposed Second Amended Complaint, Docket No. 301, ¶¶ 88-89).  Yet Plaintiffs again fail to identify the specific manual or document, any relevant time period, or which defendant allegedly issued the manual and/or corporate document.  (*Id.*)

Other allegations in the proposed amendments pertain to Ms. Weisbecker and Ms. Williams.  (See Proposed Second Amended Complaint, ¶¶ 93-94).  For example, the allegations relating to Ms. Weisbecker state that unnamed supervisors told her not to clock in before the beginning of her scheduled shift and that she would not be paid for work performed before her scheduled shift.  (*Id.* at ¶ 93).  The proposed amended pleading further alleges that, when Ms. Weisbecker complained to a supervisor, Judy Humes, and a Human Resources representative named Stacy about working during her lunch, she was told that she was complaining too much and nothing else was done.  (*Id.*)

The allegations with respect to Ms. Williams are similarly vague, as they merely aver that "defendants…made it clear…that they did not need to pay her for work performed during meal breaks."  (*Id.* at ¶ 94).  Ms. Williams does not identify anyone in particular who made any such misrepresentation to her, and simply alleges that she complained to her nurse manager and nothing was done.  (*Id.*)  Such allegations are woefully insufficient.

As a preliminary matter, it is not clear how any of these allegations that certain named plaintiffs were told not to work at certain times and that they wouldn't be paid for some activities amount to a misrepresentation.  Yet, even assuming these alleged statements to be misrepresentations, there is no allegation that the activities that were the subject of these alleged

misrepresentations were even compensable to begin with.  Reich v. S. New England Telecom.

Corp., 121 F.3d 58, 64 (2d Cir. 1997) (holding that a meal break is compensable only where "a

worker performs activities predominantly for the benefit of the employer.").  Moreover, other

than a reference to St. Elizabeth's Home, the additional allegations do not specify which of the

named defendants was involved and do not provide the date of any alleged actions.  (For

example, it is not even clear whether the alleged misrepresentations were made during the statute

of limitations period for such claims).

     In sum, these allegations fail to satisfy the particularity requirement and fail to address

this Court's explicit holding that "Plaintiffs ha[d] not isolated any particular act or representation

made by any specific entity or person on any particular date."  Decision and Order, p. 19 (citing

Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2009) (vague

windows of time are insufficient to satisfy pleading standards of Rule 9(b)).

     Further, Plaintiffs still have not alleged that a special relationship exists.  This Court held

that "[a]lthough Plaintiffs have not alleged a special relationship, this Court is not convinced that

they cannot do so as a matter of law."  (Decision and Order, 08-cv-948, Docket No. 30, p. 20-

21).  The Court also noted that union employees and their employers could possibly be parties to

a special relationship, although the law was clear that a simple employer-employee relationship

was insufficient to establish a special relationship.  (Id.)  Plaintiffs, in their proposed amendment,

have again failed to allege a special relationship despite this Court's guidance on the issue.  The

allegations of misrepresentation only identify two named plaintiffs, fail to identify the entity they

worked for, and fail to allege how a special relationship can be inferred.  Indeed, there is not a

single allegation that any of the plaintiffs was a party to a collective bargaining agreement.  As

with the particularity of the alleged misrepresentations, Plaintiffs' repeated failure to make

successful allegations following the Court's guidance evinces that their claims have no factual basis.

With respect to the individual defendants, Michael Moley and Joseph McDonald, they are not alleged to have made any misrepresentations whatsoever; the claims against them are entirely without basis and should not be allowed.  These generalized allegations continue to be insufficient to establish a claim for misrepresentation against any single defendant, much less over 20 different defendants.  Despite an opportunity to satisfy the particularity requirement, Plaintiffs' misrepresentation claim continues to be lacking.

This claim has already been voluntarily dismissed by the plaintiffs and subsequently dismissed by the Court without prejudice.  Plaintiffs' should not be allowed a third bite at the apple and leave to amend to add this claim should be denied.

2.    The Conversion Claim is Futile

Plaintiffs' conversion claim as pled in the proposed Second Amended Complaint is likewise futile.  As a preliminary matter, even with the proposed amendment, the claims are incredibly vague.  For example, Plaintiffs do not allege when the purported conversion occurred, so that it is not clear whether the alleged events occurred within the applicable statute limitations period.  The allegations also fail to identify who allegedly engaged in the conversion, other than once again naming Defendants en masse.  (Dk. No. 301, ¶¶ 83-84).

Moreover, since Defendants' initially moved to dismiss the conversion claim in 2008, other courts have addressed nearly identical, boilerplate wage-hour complaints brought by these same Plaintiffs' counsel against other healthcare systems and have found that conversion claims are not viable in this context.  Manning v. Boston Med. Ctr. Corp., 2011 U.S. Dist. LEXIS 29165, *7 (D. Mass. Mar. 10, 2011) (dismissing, inter alia, conversion claims as vague and

conclusory); <u>Nakahata v. New York-Presbyterian Healthcare Sys.</u>, 2011 U.S. Dist. LEXIS 8585, *29 (S.D.N.Y. Jan. 28, 2011) (noting that plaintiffs' wage-hour "claim for conversion also fails because New York law requires the plaintiff to have ownership, possession, or control of the money before its conversion").

Finally, even though the Court has ruled that the FLSA does not preempt Plaintiffs' common law claims to the extent they seek to recover straight time pay, such claims are still superfluous given Plaintiffs' claims under the New York Labor Law.  <u>Krichman v. J.P. Morgan Chase & Co.</u>, 2008 U.S. Dist. LEXIS 99481, *11 (S.D.N.Y. Dec. 8, 2008) (dismissing common law breach of contract claim as "nothing more than an attempt to cloak statutory claims in contract theory.").  Similarly, Plaintiffs' proposed amendment to add common law claims (of both conversion and misrepresentation) are nothing more than a thinly-veiled attempt to include additional, vexatious causes of action that add no value to their complaint.

Accordingly, the conversion claim included in the proposed amendment is futile and should not be allowed.

3.  <u>Plaintiffs Attempt to Revive Claims the Court Held were Preempted</u>

This Court held that all the common law claims, including the conversion and misrepresentation claims, are preempted by the FLSA to the extent they pertain to the recovery of overtime pay.  (Decision and Order, 08-cv-948, Docket No. 30, p. 13-14).  Plaintiffs' proposed amendments fail to take this holding into consideration, as the allegations in the amendment expressly include claims regarding the employees' rights under the FLSA, "overtime wages," work in excess of forty hours, and premium pay.  *See e.g.*, Proposed Amended Complaint, Docket No. 301, ¶¶ 83, 84, 87, 99, 100, 101, 106-107.  It is unnecessary for Defendants to once again repeat their arguments regarding preemption; the holding of this Court

serves as res judicata and prevents Plaintiffs from again trying to bring forth the preempted

claims. Further, Defendants should not have to move (a third time) to limit these common law

claims. The preempted allegations made are futile and leave to amend should be denied.


## POINT II

## PAYMENT OF FEES SHOULD BE A PRE-CONDITION
## TO ANY LEAVE TO AMEND

If leave to amend is permitted to any extent, attorney's fees should be granted pursuant to

FRCP 41(d).[2] FRCP 41(d) allows the Court to award costs *and attorneys' fees* to defendants:

> **Costs of a Previously Dismissed Action**. If a plaintiff who previously
> dismissed an action in any court files an action based on or including the
> same claim against the same defendant, the court:
>
> > (1) may order the plaintiff to pay all or part of the costs of that
> > previous action; and
> >
> > (2) may stay the proceedings until the plaintiff has complied.

Although Rule 41(d) does not, by its terms, identify attorneys' fees, federal courts have generally

allowed the recovery of attorneys' fees as part of a Rule 41(d) award. New Phone Co. v. N.Y.

City Dep't of Info. Tech. & Telecomm., 2007 U.S. Dist. LEXIS 74693, *16-17 (E.D.N.Y. 2007)

("Although Rule 41(d) does not explicitly provide that attorneys' fees may be awarded, the

weight of authority in this Circuit supports such an award"); Blauinsel Stiftung v. Sumitomo

Corp., 2001 U.S. Dist. LEXIS 20746, at *26-27 (S.D.N.Y. 2001); Rest. Teams Int'l v. Dominion

---

[2]    Defendants moved for attorney's fees in connection to the judgments dismissing the
removed state actions (Docket Nos., 08-CV-948, 08-CV-952), pursuant to Rule 41 and the
inherent power of the court. Defendants do not ask for a duplicative award of attorney's
fees by raising the issue in the present motion. To the extent attorneys' fees are granted in
those motions for items recoverable here, Defendants will offset those amounts against the
recovery allowed here.

Capital Fund, Ltd., 2002 U.S. Dist. LEXIS 13167 (S.D.N.Y. 2002); International Controls and

Measurements Corp. v. Watsco, Inc., 853 F.Supp. 585, 592 (N.D.N.Y. 1994) ("Pursuant to Fed.

Rule 41(d), defendants seek their costs and reasonable attorney fees incurred in defending this

motion. That rule provides that the court has discretion to award such costs and fees").

Moreover, an award under Rule 41(d) is within the court's discretion.  See Zucker v. Katz, 708

F. Supp. 525, 539 (S.D.N.Y. 1989).

Rule 41(d) expressly allows for recovery of attorney's fees when voluntarily dismissed

actions are re-filed.  By seeking to amend the Complaint, Plaintiffs are seeking to re-file

voluntarily dismissed claims.  Although it was the Court that decided to dismiss the claims

without prejudice after the claims were re-filed in the 08-CV-948 Action, the Court's decision

was forced by Plaintiffs' prior voluntary dismissal.  As such, Defendants should be compensated

for incurring fees in having to engage in duplicative efforts dismiss these claims.  That the claims

were previously re-filed in state court does not shield the application of Rule 41; to the contrary,

that the claims were re-filed twice highlights the need for an award of costs and fees.

Rule 41(d) is intended to prevent forum shopping, so it also "serves the broader purpose

of penalizing a plaintiff for re-filing the very suit he has previously dismissed . . . ."  Adams v.

New York State Educ. Dep't, 630 F.Supp.2d 333 (S.D.N.Y. 2009); Phillips v. Merrill Lynch,

2006 U.S. Dist. LEXIS 50952, at *19 (D.Conn. 2006) (quoting Ferens v. John Deere Co., 494

U.S. 516, 527 (1990)) ("The forum-shopping that Rule 41(d) is intended to guard against occurs

when a plaintiff voluntarily dismisses the initial suit and re-files the same action in another court,

forcing the defendant to incur further costs, because the plaintiff believes he may capture more

favorable law in the second venue than the first"); Blauinsel Stiftung , 2001 U.S. Dist. LEXIS

20746, at *27 (observing that the intended purpose of Rule 41(d) is to deter forum shopping and

vexatious litigation, which "is particularly applicable here given that Plaintiff's admitted purpose in voluntarily dismissing the [prior] suit was to avoid this court's . . . [o]rders") (citations and internal quotation marks omitted).

The present motion marks the second time the voluntarily dismissed claims have been re-filed.  An award of attorneys' fees in this extraordinary situation is amply supported.  While it is not necessary to show that the plaintiff acted in bad faith before an award under Rule 41(d) can be made, Plaintiffs' procedural maneuvers here would support such a conclusion.  See Loubier v. Modern Acoustics, Inc., 178 F.R.D. 17, 22 (D. Conn. 1998) ("There is no requirement in Rule 41(d) or the relevant case law that a defendant must show bad faith on the part of the plaintiff in order to recover costs") (citations omitted).  Plaintiffs voluntarily dismissed these claims before the Court had an opportunity to decide their merit in the then pending motion to dismiss.  Plaintiffs then waited until the Court rendered its decision on the motion to dismiss in December 2008 to serve Defendants with the Summons and Complaints in the state actions that they had filed back in August 2008.  This maneuver forced Defendants to remove the action back to federal court and move to dismiss once again.

In Loubier, 178 F.R.D. at 22, the court granted reasonable costs and fees pursuant to Rule 41(d) in a case with a "long and tortuous history" where plaintiffs had more than "one bite at the apple."  There, a state court had dismissed the plaintiffs' claims for failure to prosecute.  Claims were thereafter brought in a trilogy of actions in the District of Connecticut; in response to a motion to dismiss, the plaintiffs voluntarily dismissed their claims recognizing the merit of the motion.  The plaintiffs then commenced another action in the District of Connecticut purportedly resolving the issues raised in the prior motion to dismiss.  The Court granted attorney's fees and costs spent in the prior federal action, rejecting the plaintiffs' argument that they were amply

justified and should be "applauded" for voluntarily dismissing the prior action. (*Id*.) The Court stated that "[c]ertainly the commencement of five separate actions, with the attendant prejudgment garnishments, and the necessary expense and inconvenience to the defendants are factors that we should take into consideration in deciding whether to award costs and attorneys' fees to defendants." *Id*.

As previously set forth, Plaintiffs' justification for the voluntary dismissal here, that it was done to keep the FLSA claim "moving forward," is illogical and certainly did not promote judicial economy.  In deciding to grant attorneys' fees and costs, the Court can consider Plaintiffs' dilatory tactics and the fact that the claims as set forth in the Proposed Second Amended Complaint continue to be insufficient, despite two motions to dismiss and this Court's detailed guidance on what allegations must be included for the claims to survive. See, *e.g*., Loubier, 178 F.R.D. at 22 (taking into account in granting attorney's fees that "[t]here has been one mistake after another in the pleadings, all of which have been at a cost to the defendants"). Defendants' efforts in moving to dismiss these claims are certainly compensable, particularly as Plaintiffs have rendered prior efforts futile by perpetuating the meritless allegations.  Justice requires that Defendants be compensated.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Amend/Correct the Complaint seeking to add claims that were previously voluntarily dismissed;  in the event the Plaintiffs' Motion is granted, Defendants respectfully request that leave to amend be conditioned on the advance payment of Defendants' attorneys' fees; and for any other relief the Court deems just and proper.

DATED:      Buffalo, New York
                March 5, 2012

NIXON PEABODY LLP


By:    /s/ Mark Molloy
           Mark A. Molloy, Esq.
           Todd Shinaman, Esq.
           Joseph Carello, Esq.
*Attorneys for Catholic Health System Defendants*
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Tel:  (716) 853-8100
Email:  mmolloy@nixonpeabody.com
         tshinaman@nixonpeabody.com
         jcarello@nixonpeabody.com

13819997.2