UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GAIL HINTERBERGER, *et al.*,

                                    Plaintiffs,

                v.

CATHOLIC HEALTH SYSTEM, INC., *et al.*,

                                    Defendants.

_____

**DECISION
and
ORDER**

**08-CV-00380S(F)**

APPEARANCES:        THOMAS & SOLOMON LLP
                    Attorneys for Plaintiffs
                    MICHAEL J. LINGLE, and
                    SARAH E. CRESSMAN, of Counsel
                    693 East Avenue
                    Rochester, New York 14607

                    COBURN & GREENBAUM, PLLC
                    Attorneys for Defendants
                    JONATHAN WOLFE GREENBAUM, of Counsel
                    1710 Rhode Island Avenue, NW
                    2nd Floor
                    Washington, D.C.  20036

                    NIXON PEABODY, LLP
                    Attorneys for Defendants
                    MARK ANDREW MOLLOY, of Counsel
                    40 Fountain Plaza
                    Suite 500
                    Buffalo, New York 14202
                            and
                    AMY L. VENTRY, of Counsel
                    50 Jericho Quadrangle
                    Suite 300
                    Jericho, New York 11753
                            and
                    TODD R. SHINAMAN, of Counsel
                    1300 Clinton Square
                    Rochester, New York 14604

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on January 6, 2010 for all non-dispositive pretrial matters, pursuant to 28 U.S.C. § 636(b)(1)(A).  The matter is presently before the court on Defendants' Motion to Compel and to Dismiss (Doc. No. 293), filed January 23, 2012, including a request for costs pursuant to Fed.R.Civ.P. 41(d), Plaintiffs' Cross-motion for a Protective Order (Doc. No. 297), filed February 13, 2012, and Plaintiffs' Motion to File an Amended Complaint (Doc. No. 299), filed February 16, 2012.

## BACKGROUND and FACTS[1]

Defendants to this action, commenced on May 22, 2008, are various health care organizations, operating under the direction of Defendant Catholic Health System, Inc. ("Catholic Health System" or "CHS"), a not-for-profit New York Corporation, through which comprehensive medical care and related medical services are provided in Western New York by more than 30 health care facilities, including hospitals, primary care centers, diagnostic and treatment centers, a surgery center, long-term care facilities, adult homes, home care agencies, and other community health ministries. Plaintiffs are Defendants' non-exempt hourly employees ("Plaintiffs" or "hourly employees")), who allege Defendants violated the Fair Labor Standards Act ("FLSA"), and New York Labor Law ("NYLL") by failing to pay such hourly employees regular hourly or overtime rates for the time Defendants permitted or required hourly employees to work, including (1) during assigned meal breaks, (2) time immediately prior to and

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

after scheduled work shifts, and (3) while attending training sessions conducted by Defendants.  According to Plaintiffs, pursuant to a Break Deduction Policy maintained by CHS throughout its facilities and centers, time is deducted from the pay of hourly workers for a meal break, regardless of whether the employee works during or through the meal break.  Because the alleged uncompensated work results from policies and practices adopted and applied by Defendants to all facilities where Defendants' hourly employees work, Plaintiffs assert both a representative collective action on behalf of all similarly situated employees subject to the FLSA's protection, and a class action pursuant to Fed.R.Civ.P. 23 ("Rule 23"), to enforce the rights of Defendants' hourly employees under the NYLL wage and hours provisions for unpaid work at the employees' regular pay rate or, as applicable, overtime rates.

Plaintiffs estimate that CHS employs approximately 7,800, many of whom are hourly employees who may be eligible for inclusion in the class action.  In addition to four named Plaintiffs ("named Plaintiffs"), a sample group of 50 other hourly employees have been identified as opt-in Plaintiffs ("opt-in Plaintiffs"), in the collective action which has been conditionally certified.  The class action claims have not been certified.

The original complaint contained thirteen claims for relief, including (1) violation of FLSA; (2) NYLL violations; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) conversion; (6) unjust enrichment/restitution; (7) quantum meruit; (8) fraud and deceit; (9) negligent misrepresentation; (10) failure to keep accurate records pursuant to the Employee Retirement Income Security Act ("ERISA"); (11) breach of fiduciary duty in violation of ERISA; (12) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"); and (13) estoppel.  On

July 1, 2008, Defendants moved to dismiss the Complaint in its entirety for failing to

state a claim (Doc. No. 86) ("motion to dismiss").  On August 1, 2008, while Defendants'

motion to dismiss remained pending, Plaintiffs, pursuant to Fed.R.Civ.P. 41(a)(1)(A),

voluntarily and without prejudice dismissed their third, fourth, fifth, sixth, seventh,

eighth, ninth, tenth, eleventh, and twelfth claims for relief (Doc. No. 101), such that only

the FLSA, NYLL, and estoppel claims remain pending before the court in this action.

On August 6, 2008, Plaintiffs commenced two separate actions in New York

Supreme Court, Erie County, Index Nos. 2008-9074 ("state action 2008-9074") and

2008-9075 ("state action 2008-9075") ("state court actions"), asserting the same ten

claims voluntarily dismissed from the instant action and an estoppel claim, against the

same defendants in the state court actions.  In particular, state action 2008-9075

includes claims under New York common law for conversion, fraud and deceit,

negligent misrepresentation, and estoppel.

In a Decision and Order filed November 25, 2008 (Doc. No. 147) ("November 25,

2008 D&O"), Chief District Judge William M. Skretny denied the motion to dismiss

except as to the NYLL claim pertaining to uncompensated time when Plaintiffs worked

during or through scheduled meal breaks.  On December 3, 2008, Plaintiffs served

Defendants with the summonses and complaints for the state court actions, which

Defendants removed to this court on December 23, 2008 on the basis of diversity

jurisdiction, and state action 2008-9074 was assigned Docket No. 08-CV-952S, and

state action 2008-9075 was assigned Docket No. 08-CV-948S ("removed state court

actions").  On December 31, 2008, Defendants moved in the instant action, as well as

in the removed state court actions to consolidate the removed state court actions with

4

the instant action, and to dismiss all claims contained in the removed state court actions.  On June 25, 2010, Defendants' motions to consolidate actions were denied because the motions to dismiss pending in the instant action, and to remand pending in the removed state court actions could moot the motions to consolidate.  (Doc. No. 277).

At the commencement of discovery in the instant action, the parties agreed to conduct discovery of only a sample group of Plaintiffs, rather than seeking discovery from all members of the potential class.  In particular, the parties agreed that discovery would be conducted with regard to all four named Plaintiffs ("named Plaintiffs"), and a sample group of 50 randomly selected from the list of Plaintiffs who chose to opt-in to the litigation ("opt-in Plaintiffs") ("first sample group").  Discovery Stipulation, Defendants' Motion to Compel Exh. A (Doc. No. 293-2).  On November 2, 2010, Defendants served its First Set of Interrogatories and Amended First Request for Production of Documents ("Discovery Demands") on the named Plaintiffs and the first sample group of 50 randomly selected opt-in Plaintiffs.  Although all four named Plaintiffs responded to the First Discovery Demands, only 20 of the 50 opt-in Plaintiffs in the first sample group selected for discovery responded.  By letter dated September 14, 2011, Plaintiffs' counsel advised that 15 of those non-responding first sample group Plaintiffs had chosen to cease participating in the action, and on October 4, 2011, those 15 opt-in Plaintiffs were voluntarily dismissed from this action with prejudice.  In September 11, 2011, the parties agreed to randomly select 60 other opt-in Plaintiffs to replace the non-responding 30 opt-in Plaintiffs ("second sample group"), on whom Defendants' Discovery Demands were then served.  On November 30, 3011, responses to the Discovery Demands from only 26 of the second sample group of 60

opt-in Plaintiffs were served on Defendants.  Further, two of the 20 opt-in Plaintiffs from the first sample group who provided responses to the Discovery Demands have since sought to opt-out of this action.[2]  As such, to date, Defendants have received responses from only a total of 48 Plaintiffs, including the four named Plaintiffs, 18 opt-in Plaintiffs from the first sample group, and 26 replacement opt-in Plaintiffs from the second sample group.

By email to Plaintiffs' counsel dated December 8, 2011, Defendants inquired whether attempts to obtain additional responses from the second sample group opt-in Plaintiffs were continuing, or whether Plaintiffs' efforts in that regard had been exhausted.  Emails, Defendants' Motion to Compel Exh. E (Doc. No. 293-6).  The parties then engaged in communications attempting to determine whether additional responses from the second sample group opt-in Plaintiffs would be forthcoming.  To date, further responses from the second sample group opt-in Plaintiffs have been served on Defendants.

In a Decision and Order filed January 17, 2012 (08-CV-952S, Doc. No. 34 ("January 17, 2012 D&O"), Chief District Judge Skretny denied the motion to remand the state court action on the basis that the New York common law claims relating to unpaid overtime wages were preempted by the FLSA, dismissing that claim and the

---

[2] In their Motion to Compel, Defendants initially requested that one such opt-in Plaintiff, Norah Crawford ("Crawford"), be dismissed with prejudice.  Defendants' Memorandum - Motion to Compel at 11-13.  Plaintiffs assert that Crawford should be permitted to file a voluntary stipulation of dismissal.  Plaintiffs' Memorandum - Motion for a Protective Orders at 9 n. 4.  In further support of the Motion to Compel, Defendants acknowledged Plaintiffs' intention to move to voluntarily dismiss both Crawford, and the second opt-in Plaintiff from the first sample group who provided discovery, Lorie Caruana ("Caruana"), who also has informed Plaintiffs of her desire to opt-out of this litigation.  Accordingly, Defendants' request to dismiss Crawford with prejudice is DISMISSED as moot.  The parties are encouraged to promptly submit to the court their stipulation to voluntarily dismiss both Crawford and Caruana.

fraud claim with prejudice, but dismissing without prejudice the negligent misrepresentation and conversion claims pertaining to unpaid straight-time wages, and also dismissing the estoppel claim, yet permitting Plaintiffs to raise estoppel as an equitable bar in any litigation that may go forward.  January 17, 2012 D&O at 23.  Judge Skretny further directed that should Plaintiffs seek to replead the New York common law conversion and/or negligent misrepresentation claims, they must do so in the instant action "from which they previously voluntarily dismissed the very same claims." *Id.* at 23-24.

On January 23, 2012, Defendants filed a Motion to Compel and Dismiss (Doc. No. 293) ("Motion to Compel"), Defendants' instant motion, seeking an order compelling responses by all opt-in Plaintiffs in both the first and second sample groups who have been served with Discovery Demands and who have not been dismissed from the action, and to dismiss the FLSA claims as to those opt-in plaintiffs who have failed to respond to discovery.  Defendants' Motion to Compel is support by the attached Declaration of Todd R. Shinaman, Esq. (Doc. No. 293-1) ("Shinaman Declaration"), and exhibits A through J (Docs. Nos. 293-3  through 293-12) ("Defendants' Exh(s). __"), and Defendants' Memorandum of Law in Support of Motion to Compel Discovery and/or Motion to Dismiss Nonresponsive Opt-in Plaintiffs (Doc. No. 294) ("Defendants' Memorandum - Motion to Compel").

In opposition to Defendants' Motion to Compel, Plaintiffs filed on February 13, 2012, their Cross-Motion for a Protective Order (Doc. No. 297) ("Motion for Protective Order"), attached to which are a Memorandum of Law in Opposition to Defendants' Motion to Compel and to Dismiss and in Support of Plaintiffs' Cross-Motion for

7

Protective Order (Doc. No. 297-1) ("Plaintiff's Memorandum - Motion for Protective Order"), and the Affirmation of Sarah E. Cressman, Esq. (Doc. No. 297-2) ("Cressman Affirmation - Motion for Protective Order").

On February 16, 2012, Plaintiffs filed a motion seeking leave to file an amended complaint (Doc. No. 299) ("Motion to Amend"), to replead the same New York common law claims for conversion and negligent misrepresentation initially brought in this action, then voluntarily dismissed, repleaded in state court action 2008-9075 that was subsequently removed to this court, assigned Docket No. 2008-948S, where they were dismissed without prejudice on January 17, 2012. Attached to the Motion to Amend is the Memorandum of Law in Support of Motion to Amend Complaint (Doc. No. 299-1) ("Plaintiffs' Memorandum - Motion to Amend), the Affirmation of Sarah E. Cressman (Doc. No. 299-2) ("Cressman Affirmation - Motion to Amend"), and a copy of the Proposed Second Amended Class Action Complain (Doc. No. 299-3) ("Proposed Second Amended Complaint"). Additional exhibits in support of Plaintiffs' Motion to Amend were filed on February 23, 2012 (Doc. No. 301).

Also filed on February 23, 2012, were The Reply Affidavit of Mark A. Molloy, Esq. in Support of Motion to Compel Discovery and/or Motion to Dismiss Non-Responsive Opt-in Plaintiffs (Doc. No. 302) ("Molloy Reply Affidavit"), and the Reply Brief in Support of Motion to Compel Discovery and/or Motion to Dismiss Non-Responsive Opt-in Plaintiffs ("Defendants' Reply - Motion to Compel"). Plaintiffs filed their Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion for Protective Order (Doc. No. 302) ("Plaintiff's Reply - Motion for Protective Order").

On March 5, 2012, Defendants filed the Attorney Declaration of Mark A. Molloy,

8

Esq., in Opposition to Motion to Amend Complaint (Doc. No. 305) ("Molloy Decaration -

Motion to Amend"), and the Memorandum of Law in Opposition to Motion to Amend

Complaint (Doc. No. 306) ("Defendants' Response - Motion to Amend").

On March 12, 2012, Plaintiffs filed the Reply Memorandum of Law in Support of

Plaintiffs' Cross-Motion for Protective Order (Doc. No. 311) ("Plaintiffs' Reply - Motion

for Protective Order").  On March 19, 2012, Plaintiffs filed the Reply Memorandum of

Law in Support of Motion to Amend Complaint (Doc. No. 313) ("Plaintiffs' Reply - Motion

to Amend").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion to Compel is GRANTED in part and

DENIED in part; Plaintiffs' Cross-Motion for a Protective Order is DENIED; and

Plaintiffs' Motion to Amend is DENIED.  Defendants' request for costs pursuant to Rule

41(d) is DISMISSED as moot.


## DISCUSSION

### 1.    Motions to Compel and for Protective Order

To assist the reader, the court first recapitulates the events precipitating

Defendants' Motion to Compel and Plaintiffs' Motion for a Protective Order.  According

to a Stipulation executed by the parties in August 2011 ("Discovery Stipulation"),[3] the

parties agreed to conduct "Phase 1" discovery of the four named Plaintiffs, as well as

50 randomly-selected opt-in Plaintiffs.  The 50 opt-in Plaintiffs were randomly selected

by compiling a list of all opt-in Plaintiffs, assigning a computer-generated random

---

[3] A copy of the Discovery Stipulation is attached as Exhibit A to Defendants' Motion to Compel.

number to each of the opt-in Plaintiffs, sorting the opt-in Plaintiffs in numeric order from the lowest to the highest of the randomly-assigned numbers, and selecting the first 50 names from the resulting list ("the first sample group").  The parties' decision to conduct discovery of these 50 opt-in Plaintiffs was predicated on the belief, now understood as mistaken, that all 50 randomly-selected opt-in Plaintiffs in the first sample group would respond given that such Plaintiffs had agreed to opt into the FSLA portion of this action. On November 2, 2010, Defendants served its First Set of Interrogatories and Amended First Request for Production of Documents on the first sample group and all four named Plaintiffs.  Although responses were received from all four named Plaintiffs, only 20 of the 50 opt-in Plaintiffs in the first sample group provided responses.  By letter from Plaintiffs' counsel Michael J. Lingle ("Lingle") dated September 14, 2011 ("September 14, 2011 Letter"),[4] Defendants were advised that 15 of the opt-in Plaintiffs in the first sample group had chosen to opt-out.  Those 15 Plaintiffs were voluntarily dismissed from this action on October 21, 2011 (Doc. No. 289).  Mr. Lingle also identified "five [non-responsive opt-in] Plaintiffs who have been unable to complete the interrogatories for other reasons," and "four opt-in plaintiffs for whom [Plaintiffs] have insufficient contact information."  September 14, 2011 Letter at 1.  By letter dated September 19, 2011 ("September 19, 2011 Letter"),[5] Defendants' attorney Mark Molloy ("Molloy"), advised that although Plaintiffs, in the September 14, 2011 Letter, account for 44 of the 50 opt-in Plaintiffs in the first sample group, Plaintiffs failed to explain the status, *i.e.*,

---

[4] Defendants' Motion to Compel, Exh. B.

[5] Defendants' Motion to Compel, Exh. C.

whether continuing as parties, of six other non-responsive Plaintiffs.  According to Defendants, Plaintiffs have never explained the status of these six non-responding Plaintiffs with regard to the discovery requests.  Shinaman Declaration ¶¶ 26, 28.

Following a series of discussions between Plaintiffs' and Defendants' counsel, it was agreed that the sample group of opt-in Plaintiffs for discovery would be "repopulated" with 60 additional randomly selected opt-in Plaintiffs from whom Defendants would seek written discovery responses.  The parties agreed that because 60% of the opt-in Plaintiffs in the first sample group failed to respond to Defendants' Discovery Demands, an additional 60 opt-in Plaintiffs was necessary for the second sample group to increase the chance of obtaining a total of 50 responses from the opt-in Plaintiffs.[6]  60 opt-in Plaintiffs comprising the second sample group were chosen by selecting next 60 names from the same the randomly-generated list from which the 50 opt-in Plaintiffs in the first sample group were chosen.  Defendants's Discovery Demands were then served on the second sample group.  On November 30, 2011, Plaintiffs' counsel served Defendants with written discovery responses from only 26 of the 60 opt-in Plaintiffs in the second sample group.

In an series of emails dated December 8, 9, 13, 20, and 21, 2011 ("December 2011 Email Exchange"),[7] exchanged between counsel for Plaintiffs and Defendants, the

---

[6] The parties do not explain the numeric equation used to identify 60 as the number of additional randomly selected opt-in Plaintiffs most likely to produce 30 responses, thereby bringing the total number of responses received to Defendants' Discovery Demands to 50.  Given that 30 responses from the 60 opt-in Plaintiffs comprising the second sample group would indicate a 50% response rate, the number was too small; rather, assuming a 40% response rate from the second sample group of opt-in Plaintiffs, consistent with the response rate for the first sample group, the parties should have agreed to repopulate the sample group with an additional 75 randomly selected opt-in Plaintiffs, given that 40% of 75 is 30 (40% X 75 = 30).

[7] Defendants' Motion to Compel, Exh. E.

parties discussed whether Plaintiffs were attempting to obtain additional responses from opt-in Plaintiffs in the second sample group to reach a sample size of 50, but no definitive response was ever received from Plaintiffs.  Most relevant to this discussion, on December 9, 2011, Cressman advised "[w]e will be providing you with the additional responses for the sample of 50."  December 2011 Email Exchange at 1.  Shinaman responded on December 13, 2011, with the following:

> to make sure that we maintain the random nature of the sample, can you let us know how you obtained and provided the responses?  For example, did you initially send the requests to all 60 additional people [in the second sample group]?  Are you sending us all the responses your received, and if not, how are you decided which to send?

*Id.*

Defendants maintain, and Plaintiffs do not dispute, no response to Shinaman's inquiry regarding the manner in which Plaintiffs determined which responses to the Discovery Demands served on the second sample group were produced to Defendants.

By letter dated December 29, 2011 ("December 29, 2011 Letter"),[8] Shinaman and Molloy advised Lingle that Defendants assumed that Plaintiffs would be moving to voluntarily dismiss each of the 34 randomly selected opt-in Plaintiffs in the second sample group who failed to provide responses to Defendants' Discovery Demands. December 29, 2011 Letter at 1-2.  Defendants further alerted Lingle to their concern regarding Cressman's statement in her December 9, 2011 email that Plaintiffs "would be providing additional discovery responses in order to reach a sample of 50," because "the nature of that statement raised some concerns about the plaintiffs' methodology

---

[8] Defendants' Motion to Compel, Exh. F.

regarding discovery and whether it might compromise the random nature of the sample [given that it] implied that the plaintiffs would only be serving enough responses to meet the predetermined number of 50 opt-ins." *Id.* at 2-3.

Defendants do not argue that any of the responses to their Discovery Demands received from the named Plaintiffs or the opt-in Plaintiffs in either the first or second sample groups is incomplete or insufficient.  Rather, the essence of Defendants' Motion to Compel and Plaintiffs' Motion for a Protective Order is whether all 110 randomly-selected opt-in Plaintiffs comprising both the first and second sample groups should be compelled to provide responses to Defendants' Discovery Demands, or whether the total of all such responses should be limited to 50 opt-in Plaintiffs.

Defendants take issue with the fact that all Plaintiffs who have been served with Discovery Demands in both the first sample group and the second sample group have not served responses to the Discovery Demands and suggest that Plaintiffs, rather than producing all discovery responses received, may be improperly designating those opt-in Plaintiffs whose discovery responses are not favorable to their claims as "non-responsive," thereby manipulating the data in favor of Plaintiffs and prejudicing Defendants.  Defendants' Memorandum -Motion to Compel at 16-17.  According to Defendants, their suspicion that Plaintiffs may be attempting to manipulate the discovery process by only providing Defendants with responses to Discovery Demands that are favorable to Plaintiffs' claims is supported by the fact that it is "statistically odd" that 30% of the opt-in Plaintiffs in the first sample group chose to opt-out of litigation rather than provide responses to the Discovery Demands, yet Plaintiffs have not asserted that any of the opt-in Plaintiffs in the second sample group also elected to opt-

out of the litigation, rather than provide responses to Defendants' Discovery Demands.

Shinaman Declaration ¶ 60.  As such, Defendants move (1) to dismiss, with prejudice,

the FLSA claims of all opt-in Plaintiffs in both the first and second sample groups who

have not cooperated with discovery or, alternatively, (2) for an order compelling

discovery from all members of the first and second sample groups of opt-in Plaintiffs,

totaling 110 opt-in Plaintiffs, within 14 days, or face dismissal with prejudice for failing to

comply, Molloy Declaration ¶¶ 95-98; Defendants' Memorandum - Motion to Compel at

8-18, and (3) for an order directing Plaintiffs' counsel to advise Defendants of all opt-in

Plaintiffs that have communicated an intent to opt-out of the instant litigation.

Defendants' Memorandum - Motion to Compel at 19.  Defendants also request an

award of attorneys' fees in connection with the Motion to Compel. *Id.* at 24-25.

In opposition, Plaintiffs cross-moved for a protective order asserting (1)

Defendants have failed to demonstrate that dismissal of opt-in Plaintiffs from the first

sample group is an appropriate sanction for failing to cooperate with discovery,

Plaintiffs' Memorandum - Motion for Protective Order at 5-9; (2) Defendants' motion to

dismiss those opt-in Plaintiffs from the second sample group who failed to respond to

discovery is without any basis, *id.* at 9-12; (3) there are no issues regarding the

randomness of the responses received from either sample group of opt-in Plaintiffs and

Defendants' assertion to the contrary is mere speculation, *id.* at 12-20; and (4)

Defendants are not entitled to an award of attorneys' fees in connection with the Motion

to Compel. *Id.* at 20.  Plaintiffs further argue in support of their Motion for a Protective

Order that (1) Defendants are attempting to retroactively alter the parties' written

agreement regarding sample discovery by seeking to compel responses from more

14

than the agreed-upon 50 opt-in Plaintiffs, *id.* at 20-21; the 20 responses received from the first sample group, together with the 30 responses received from the second sample group, establishes Defendants have received a total of 50 responses from the opt-in Plaintiffs, as contemplated by the parties' written agreement regarding sample discovery, *id.* at 21, (3) dismissal of the opt-in Plaintiffs who did not respond to discovery will reduce the class size, *id.* at 21-22, and (4) a protective order is necessary to prevent Defendants from obtaining communications and information protected either by the attorney-client privilege or as work produce. *Id.* at 22.

In further support of the Motion to Compel and in opposition to Plaintiffs' Motion for a Protective Order, Defendants assert that Plaintiffs' arguments in support of their request for a protective order are the same arguments advanced in opposition to Defendants' Motion to Compel, demonstrating that the "Cross-Motion" portion of Plaintiff's submissions is actually "another political maneuver to get the last word" by filing a reply in support of the cross-motion which would actually be a sur-reply in opposition to Defendants' Motion to Compel, without first obtaining leave of the court. Molloy Reply Affidavit ¶¶ 4-8.  Defendants further assert that Plaintiffs' failure to serve responses to discovery from all 110 opt-in Plaintiffs randomly selected in the first and second sample groups will allow Plaintiffs' attorneys to withhold responses received from their clients that are not favorable to Plaintiffs' claims, and designate those opt-in Plaintiffs as non-responsive, which will permit Plaintiffs to unilaterally determine which opt-in Plaintiffs constitute the representative class, altering the factual record and resulting in prejudice to Defendants. *Id.* ¶ 19.  Defendants maintain that Plaintiffs' continued failure to participate in sample discovery pursuant to the written agreement

executed by the parties in August 2011, indicates Plaintiffs are attempting to manipulate the discovery process by labeling as non-responsive an opt-in Plaintiff whose discovery responses are not favorable to the claims, rather than providing the responses to Defendants, and that to avoid the resulting prejudice, Plaintiffs should be compelled to serve responses from all opt-in Plaintiffs who have been randomly selected in either the first or second sample group, or face dismissal.  *Id.* ¶¶ 25-85.   Accordingly, Defendants request the court dismiss, with prejudice, the FLSA claim of all opt-in Plaintiffs who have not cooperated in the discovery process or, alternatively, compel discovery responses, within 14 days, from all members of the first and second sample group or face dismissal with prejudice.  *Id.* ¶¶ 94-97.

In further support of their Motion for a Protective Order, Plaintiffs reiterate that they only agreed to provide responses to Defendants' Discovery Demands from a total 50 opt-in Plaintiffs, regardless of whether such responses come from the randomly selected opt-in Plaintiffs comprising the first sample group, the second sample group, or a combination of the two sample groups.  Plaintiffs' Reply - Motion for a Protective Order at 2-5.  Plaintiffs also maintain Defendants have failed to make the requisite showing to support dismissal of the claims as a sanction for failing to cooperate with discovery.  *Id.* at 5-8.  Nor have Defendants, according to Plaintiffs, offered any opposition to Plaintiffs' request for a protective order preventing disclosure of the process or methodology Plaintiffs employed to obtain discovery responses from the second sample group.  *Id.* at 8-9.

The court's research reveals no case directly on point.  Nevertheless, a plain reading of the papers submitted in connection with Defendants' Motion to Compel and

Plaintiffs' Motion for a Protective Order establishes that Defendants are most concerned that the responses they receive to their Discovery Demands are both forthright and complete.  Unfortunately, Plaintiffs' papers provide nothing to allay Defendants' concerns that Plaintiffs may have engaged in efforts to manipulate the discovery process by submitting only those responses to Defendants' Discovery Demands that are favorable to Plaintiffs' claims, and designating those Plaintiffs whose responses were not similarly favorable as "non-responsive."  For example, Plaintiffs cryptically stated in connection with the responses provided by the first sample group that five of the opt-in Plaintiffs from the first sample group "have been unable to complete the interrogatories for other reasons."  September 14, 2011 Letter.  No further explanation as to why these five Plaintiffs were unable to complete their responses has been provided.  Nor have Plaintiffs ever provided any explanation as to the status of the six unaccounted for opt-in Plaintiffs in the first sample group.  In short, despite creating two sample groups of randomly selected opt-in Plaintiffs totaling 110 opt-in Plaintiffs, to date, Defendants have received responses to their Discovery Demands from only 44 instead of the agreed upon 50.

Use of a sample to avoid burdensome and even impractical discovery in cases involving numerous parties is of course a well-recognized technique.  *See* Manual for Complex Litigation, Fourth, § 21.14 (2009) (acknowledging use of sampling methodology for discovery in class actions may be appropriate).  That the response rate may exceed the target sample size is an inherent possibility in any sampling system, but it does not follow that such responses should be treated as null.  If the sample size is exceeded, the requesting party must be entitled to production regardless of whether

17

the 'extra' responses are favorable to the responding party or not.  Such would be the result even if sampling were not employed and blind adherence to the target sample size, thereby limiting responses, cannot supersede the right of the requesting party to production absent valid relevance or privilege objections, or a timely protective order.

Given that the response rate from both the first and second sample groups was approximately 40%, a third sample group of 15 randomly selected opt-in Plaintiffs is necessary to produce the final six responses necessary to fulfill the terms of the Discovery Stipulation.  Although it is possible more than six responses may be received from the third sample group, or that more responses may yet be received in response to the second sample group, the court construes parties' decision to select a second sample group of 60 opt-in Plaintiffs as a *de facto* amendment to the Discovery Stipulation and that implicit in such modification was the understanding that more than 40% of the second sample group might respond.  In such case, the only way to avoid the possibility of the type of discovery manipulation in which Defendants suggest Plaintiffs are engaging, *viz*, forwarding to Defendants only those Discovery Demand responses that are favorable to Plaintiffs' claims, and designating those opt-in Plaintiffs' whose Discovery Demand responses are not similarly favorable as "non-responsive" and, thus, not forwarding the responses to Defendants, is to require Plaintiffs to forward all Discovery Demand responses received from the third sample group, even if more than six replies are received.[9]  It is also possible that less than six responses will be

---

[9] Although this solution does not address the possibility that Plaintiffs may have withheld certain responses received from some opt-in Plaintiffs in the first and second sample groups, the responses received from the third sample group should be sufficient to permit Defendants to draw conclusions as to what percentage of the responses were received from first and second sample groups but were unfavorable to Plaintiffs' claims and thus withheld from Defendants, an issue Defendants may elect to

received from the third sample group of 15, or that even if six or more responses are received, that others who have already responded will choose to opt-out.  In such circumstances, a fourth sample group may be necessary.[10]

The court could order the Discovery Demands be served on the next six Plainitffs on the list of randomly selected opt-in Plaintiffs with responses due within a couple of weeks, and then as opt-in Plaintiffs fail to timely respond, order the Discovery Demands be served, seriatim, on the next randomly selected opt-in Plaintiffs as necessary to obtain responses from the final six opt-in Plaintiffs as originally anticipated by the Discovery Stipulation.  Given the poor response to the first and second sample groups, however, the time required to execute this option would result in undue delay when compared to the complete absence of any prejudice to Plaintiffs should responses in excess of six be received from the third sample group of 15.

With regard to Defendants' request to dismiss the FLSA claims as to all randomly-selected opt-in Plaintiffs in both the first and second sample groups who have failed to comply with Defendants' discovery requests, the sanction of dismissal is extremely harsh and rarely imposed for a first discovery violation.  *Cine Forty-Second Street Theatre Corp. V. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (generally, courts eschew imposing the harshest sanctions available for discovery violations for an initial discovery violation).  Fed.R.Civ.P. 37(c) ("Rule 37(c)") governs the use of sanctions to combat discovery abuses and include (1) ordering payment of

---

explore in a further motion.

[10] The response by more than six from the third sample group will lessen the need for a fourth sample group should any opt-in Plaintiffs who provided discovery responses later choose to opt-out.

reasonable expenses, including attorney's fees, caused by the non-compliant party's failure to disclose; (2) informing the jury of the non-compliant party's failure to disclose; and (3) the sanctions listed under Rule 37(b)(2)(A)(i) - (vi) concerning the failure to comply with a court order, including dismissing the action in whole or in part, Fed.R.Civ.P. 37(b)(2)(A)(v), relevant here given Defendants' request to dismiss with prejudice the FLSA claims as to those opt-in Plaintiffs who have failed to comply with discovery.  The severe sanction of "dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault'" by the non-compliant party.  *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990)).  "[D]ismissal pursuant to Rule 37 is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction.'" *Id.* (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).  Among the factors to be considered in assessing whether dismissal of an action to sanction for non-compliance with discovery are "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir.  2009) (internal quotation marks and citation omitted).  Further, dismissal of an action as a sanction generally is not imposed absent the giving of a warning that noncompliance may result in dismissal.  *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (citing

*Bobal*, 916 F.2d at 766).

In the instant case, no warning that the continued failure to comply with requested discovery has been given, nor have Plaintiffs failed to provide any court-ordered discovery.  Defendants have also failed to demonstrate Plaintiffs' non-compliance with discovery has been willful or in bad faith, and a plain reading of the correspondence exchanged between the parties on this issue suggest the failure is best attributed to Plaintiffs' failure to comprehend the need to earnestly engage in the discovery process.  In short, at this time, dismissal with prejudice of the FLSA claims for those opt-in Plaintiffs who have failed to provide any responses to Defendants' discovery claims, the sanction requested by Defendants, would be premature.

As for Plaintiffs' assertion that some of the requested information is protected by a privilege, Plaintiffs' Memorandum - Motion for a Protective Order at 22, when a party withholds relevant information that is discoverable, pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to promptly provide the adverse party with notice of the claimed privilege by preparing and serving a privilege log sufficiently describing the withheld information to enable the adverse party to assess the validity of the asserted privilege.  Fed.R.Civ.P. 26(b)(5)(A); *see also* W.D.N.Y. Local R.Civ.P. 26(e)(2) (requiring assertion of privilege "be furnished in writing when the party responds to such discovery or disclosure").  A failure to comply with this requirement results in a waiver of the asserted privilege in the withheld information.  *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (failure to provide adequately detailed court-ordered privilege log waives privilege); *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 2010 WL 2595332, at *5 (W.D.N.Y. June 24, 2010)

(plaintiff required to produce two documents plaintiff asserted was protected because any privilege that may have attached to two documents was waived by failing to list the documents in a privilege log provided to defendants); *Bove v. The Allied Group*, 2004 WL 5902631, *1 (W.D.N.Y. Oct. 28, 2004 (failure to provide privilege log complying with local rule waives privilege); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, *3 n. 1 (S.D.N.Y. Oct. 17, 2000) (citing *PKFinans Int'l. Corp. v. IBJ Schroder Leasing Corp.*, 1996 WL 525862, *3 (S.D.N.Y. Sep't. 17, 1996) ("party's failure to produce [privilege] log results in a waiver of any privilege that might otherwise be asserted" (citing caselaw))).  As such, any privilege that could have been asserted has been waived by Plaintiffs' failure to timely assert the privilege and that portion of Plaintiffs' Motion for a Protective Order is therefore DENIED.

With regard to Defendants' request that the court award attorneys' fees incurred in connection with the Motion to Compel, Fed.R.Civ.P. 37 ("Rule 37") provides, in relevant part, that if a motion to compel is granted, or if the discovery was provided after the motion to compel was filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed.R.Civ.P. 37(a)(5)(A). There are, however, three exception in which the payment of attorneys' fees should not be ordered, including (1) the motion was filed before the movant attempted in good faith to obtain the discovery without court action; (2) the nondisclosure was "substantially justified," or (3) "other circumstances make an award of expenses unjust."  Fed.R.Civ.P. 37(a)(5)(A)(i), (ii), and (iii) ("Rule 37(a)(5)(A)(___)").

Plaintiffs were informed by Defendants regarding the deficiencies in Plaintiffs'

responses to Defendants' discovery requests in December 2011.  December 2011

Email Exchange, Defendants' Motion to Compel, Exh. E, yet failed to seek a protective

order until February 13, 2012 (Doc. No. 297), after Defendants moved to compel on

January 23, 2012 (Doc. No. 293).  As such, Plaintiffs cannot contend that Defendants'

Motion to Compel is premature.  Further, Plaintiffs' refusal to provide the requested

production entailing all the responses received from the first and second sample groups

cannot be considered as substantially justified as required under Rule 37(a)(5)(A)(ii).

"The Supreme Court has defined 'substantially justified' to mean 'justified in the

substance or in the main' - that is, justified to a degree that could satisfy a reasonable

person."  *United States v. $ 19,047.00 in U.S. Currency*, 95 F.3d 248, 251 (2d Cir.

1996) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  *See also Ericksson v.

Commissioner of Social Security*, 557 F.3d 79, 82 n. 1 (2d Cir. 2009) (citing *Pierce*, 487

U.S. at 565 as "holding that the understanding of 'substantially justified' 'most naturally

conveyed by the phrase . . . is not 'justified to a high degree,' but rather 'justified in

substance or in the main' - that is, justified to a degree that could satisfy a reasonable

person.").  It thus is not reasonably arguable that all of the responses received by

Plaintiffs in excess of the number needed to satisfy the 50 sample number could be

withheld at Plaintiffs' election.  The stipulation terms establishing the sampling method

in this case did not so provide and it is of course indisputable that all responses

obtained from responding parties must, absent privilege or a protective order, be

produced under Fed.R.Civ.P. 33(a) and 34(a).  Plaintiff's anemic attempt to plausibly

explain why this was not done supports Defendants' suggestion that Plaintiff merely

seeks to suppress adverse responses.  Use of a sample is a practical method to address potentially voluminous discovery issues.  Manual for Complex Litigation, Fourth, § 21.14 (2009).  Such practical and cost-effective techniques to do so, however, cannot override the general and salutary objective of federal civil litigation and the exercise of available discovery devices to search and obtain the true facts of the case.  As such, there is no reasonably arguable basis for Plaintiffs' failure to fully comply with Defendants' requests, and Plaintiffs' refusal was not substantially justified.  Whether such refusal permits finding that an award of attorneys' fees would be unjust, pursuant to Rule 37(a)(5)(A)(iii), requires the court determine that "'other circumstances make an award unjust – as where the prevailing party also acted unjustifiably.'" *JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.*, 2005 WL 1958361, at *13 (S.D.N.Y. Aug. 16, 2005) (quoting 1970 Advisory Committee Notes to Rule 37).  As no such special circumstances obtain here, and Plaintiffs point to none, this exception does not apply.

Therefore, none of the three exceptions apply and, accordingly, having granted Defendants' Motion to Compel, Defendants' request for an award of attorneys' fees is also GRANTED.

Accordingly, Defendants' Motion to Compel is GRANTED insofar as Defendants move to compel discovery responses from all 110 randomly-selected opt-in Plaintiffs comprising both the first and second sample groups.  Such responses shall be served within 30 days of this Decision and Order.  As to Defendants' request that those opt-in Plaintiffs who fail to serve  responses to Defendants' discovery requests within 30 days of this Decision and Order, be dismissed, Defendants' Motion to Compel is DENIED

24

without prejudice, and Defendants can file a further move to dismiss such Plaintiffs.

Plaintiffs' Motion for a Protective Order is DENIED.

**2.      Motion to Amend**

Plaintiffs seek leave to file an amended complaint to replead the New York

common law negligent misrepresentation and conversion claims previously voluntarily

dismissed from this action, refiled in a separate state court action that was removed to

this court, and then dismissed on January 17, 2012 for failing to state a claim.

According to Plaintiffs, their voluntary dismissal and refiling of these claims in New York

Supreme Court was intended "to keep the FLSA claims moving forward in this action"

without having to litigate the motion to dismiss as to the New York common law claims.

Plaintiff's Memorandum - Motion to Amend at 1. In support of the motion, Plaintiffs

maintain that none of the circumstances in which motions to amend may be denied is

present here, including undue delay, bad faith, or dilatory motion on the part of

Plaintiffs, nor will "merely adding back in two common law claims that survived

defendants' motion to dismiss [in 08-CV-951S] would not prejudice defendants, since

discovery in this case remains ongoing." *Id.* at 3.

Defendants argue in opposition that Plaintiffs' Motion to Amend is futile and

dilatory and, if granted, would confer an "unjustified benefit" on Plaintiffs given that

Plaintiffs moved to consolidate the claims asserted in 08-CV-951S with the instant

claims, but were denied.  Defendants' Response - Motion Amend at 1-2.  Defendants

further maintain that insofar as both the negligent misrepresentation and conversion

claims are based on overtime pay, this court has already determined the claims are

preempted by the FLSA. *Id.* at 4-5. According to Defendants, the allegations in the

Proposed Second Amended Complaint in support of the negligent misrepresentation

and conversion claims are too generalized and conclusory as to be subject to dismissal

for insufficient pleading. *Id.* at 7-13. Alternatively, Defendants maintain that if Plaintiffs

are permitted to file the Second Amended Complaint, such filing should be conditioned

on Plaintiffs' payment of Defendants' attorneys' fees pursuant to Fed.R.Civ.P. 41(d)

("Rule 41(d)") as the costs of a previously dismissed action. *Id.* at 13-16. In further

support, Plaintiffs argue their Motion to Amend is neither dilatory nor prejudicial,

Plaintiffs' Response - Motion to Amend at 1-2, the claims they seek to replead are not

futile, *id.* at 2-7, and that Plaintiffs are not seeking to revive any claims previously

determined to be preempted by the FLSA. *Id.* at 7-8. Finally, Plaintiffs maintain

Defendants are not entitled to attorneys' fees because Rule 41(d) only permits a

defendant to be awarded the costs of a previously dismissed action upon its refiling as

a subsequent action. *Id.* at 8-10.

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted

when justice so requires." An amended pleading may be filed pursuant to Fed.R.Civ.P.

15(a) where the new allegations do not unduly prejudice an opponent, are not the result

of undue delay or bad faith, and are not futile. *Foman v. Davis*, 371 U.S. 178, 181

(1962). Absent a showing that significant additional discovery burdens will be incurred

or that the trial of the matter will be significantly delayed, amendment should be

permitted. *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993). "Leave

to amend may properly be denied if the amendment would be futile, as when the

proposed new pleading fails to state a claim on which relief can be granted." *Anderson*

*News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing cases).

"The adequacy of a proposed amended complaint to state a claim is to be judged by

the same standards as those governing the adequacy of a filed pleading." *Id.* (citing

*Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) In particular, the

adequacy of a proposed amended complaint is determined according to the same

standards governing the adequacy of a filed pleading as recently articulated by the

Supreme Court. *Id.* at 185-86 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). *See also Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55

(2d Cir.1999) (an amendment is futile "if the proposed amended [pleading] would be

subject to 'immediate dismissal' for failure to state a claim or on some other ground.").

Here, Plaintiffs seek leave to file a second amended complaint to reassert the

same New York common law claims of negligent misrepresentation and conversion

alleged in the original complaint, and which were among the ten claims Plaintiffs

voluntarily dismissed from this action prior to reasserting the same claims in the state

court actions. The court considers whether permitting the amendment would be dilatory

or prejudicial, futile, or should be permitted only upon the condition that Plaintiffs pay

Defendants' attorneys' fees incurred in connection with defending these claims in

connection with the earlier actions.


## A.      Dilatory and Prejudicial

Insofar as Defendants maintain the proposed amendment is dilatory, prejudicial,

and otherwise not in the interest of justice, Defendants' Response - Motion to Amend at

6-7, Plaintiffs maintain they originally voluntarily dismissed the negligent

misrepresentation and conversion claims and refiled them in the state court actions "to keep the FLSA claims moving forward in this action," Plaintiffs' Response - Motion to Amend at 1, after Defendants filed their motion to dismiss which Plaintiffs' feared could "unduly delay conditional certification of the FLSA claims . . . ." *Id.* at 3. According to Defendants, the prejudice to Defendants that would occur if Plaintiffs are permitted to replead their negligent misrepresentation and conversion claims "is obvious, as [Defendants] have been forced to incur considerable expenses and were denied a timely resolution of these claims because of Plaintiffs' maneuvers, just to end up in the same place the parties would have been in December 2008," and that the proposed amendment would only serve to permit Plaintiffs to "perpetuate their meritless allegations." Defendants' Response - Motion to Amend at 7. Plaintiffs further maintain that the voluntary dismissal of the negligent misrepresentation and conversion claims was necessary to "protect the rights of absent class members." Plaintiffs' Reply - Motion to Amend at 2. Plaintiffs argue that Defendants' asserted prejudice is without merit because Defendants simply refiled the same motion to dismiss in the refiled action as was filed in this action prior to the voluntary dismissal of the New York common law claims. *Id.* at 2. Plaintiffs assert that discovery in this action remains open, and the facts underlying the negligent misrepresentation and conversion claims overlap with those supporting the FLSA and NYLL claims, such that repleading will not be prejudicial to Defendants or cause Defendants to incur additional extensive discovery. *Id.*

A careful review of this case establishes that Plaintiffs' decision to voluntarily dismiss certain claims from this action and to refile those claims in state court did

nothing to advance the litigation of any of the claims either here or in state court and

Plaintiffs' assertions in that regard indicate some uncertainty as to how best to proceed

in litigating all of Plaintiffs' claims.  Nevertheless there is no evidence that the decision

was intended to cause delay or to otherwise obstruct Defendants' defense of any

claims but, rather, suggest confusion of a procedural nature on the part of Plaintiffs.  As

such, Plaintiffs' Motion to Amend will not be denied on the basis that the motion is a

dilatory tactic.

Nor is there any basis on which to find that permitting the requested amendment

will unduly prejudice Defendants.  Rather, Defendants have already been required to

defend the claims, whether in this action or in the state court actions, and the factual

allegations on which the negligent misrepresentation and conversion claims are based

are largely the same as those underlying the FLSA and NYLL claims such that

defending the claims will not required additional, time-consuming discovery.  *Compare*

Complaint ¶¶ 74-127, and Proposed Second Amended Complaint ¶¶ 74-114.

Accordingly, Plaintiffs' Motion to Amend will not be denied as imposing undue prejudice

on Defendants.


**B.       Futile**

Plaintiffs assert the proposed negligent misrepresentation and conversion claims

"would not be futile, but would assert valid allegations which, when proven at trial, will

entitle Plaintiffs to relief."  Plaintiffs' Memorandum - Motion to Amend at 3.  In

opposition, Defendants argue Plaintiffs' proposed negligent misrepresentation claim

has not been pleaded with sufficient particularity as required under Fed.R.Civ.P. 9(b)

("Rule 9(b)"), Defendants' Response - Motion to Amend at 7-11, the proposed conversion claim Plaintiffs seek to plead is so vague as to be futile, *id.* at 11-12, and Plaintiffs are attempting to revive claims the court has already held are preempted by the FLSA, *id.* at 12-13.  In further support of the Motion to Amend, Plaintiffs assert the negligent misrepresentation claim sufficiently pleads the requisite duty owed by Defendant to Plaintiffs, that Defendants knowingly made a false representation about information upon which Defendants anticipated Plaintiffs would rely and that Plaintiffs, relying on the misrepresentation, acted to their detriment.  Plaintiffs' Reply - Motion to Amend at 3-6.  With regard to the conversion claim, Plaintiffs clarify they are repleading the claim, as permitted in the January 17, 2012 D&O at 21, only with regard to "straight-time wages," but not overtime wages. *Id.* at 6.  Plaintiffs further argue that the elements of conversion are sufficiently pleaded, *id.* at 6-7, and that neither of the claims Plaintiffs seek to replead has been held to be preempted by the FLSA. *Id.* at 7.

### 1.     Negligent Misrepresentation

Plaintiffs' proposed fourth claim for relief alleges "Defendants willfully violated their obligation under the common law and the state laws of New York by misrepresenting to Class Members that they would be fully compensated for all services performed . . . ."  Proposed Second Amended Complaint ¶ 123.  Defendants argue the proposed negligent misrepresentation claim lacks the particularity required under Rule 9(b).  Defendants' Response - Motion to Amend at 7-11.  Plaintiffs argue in further support of their Motion to Amend that the proposed negligent misrepresentation claim sufficiently alleges each of the required elements.  Plaintiffs' Reply - Motion to Amend

at 4-6.

"It is settled New York law that the elements of negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage.  Most relevant, the action requires that (5) the declaration must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (citing *White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977)).  Whether Rule 9(b)'s particularity requirement applies to state law negligent misrepresentation claims remains an open question in the Second Circuit Court of Appeals.  *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 188 (2d Cir. 2004) ("Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation.  District court decisions in [the Second] Circuit have held that the Rule is applicable to such claims, but [the Second Circuit] has not adopted that view . . . .").  Nevertheless, in determining whether a complaint adequately pleads justifiable reliance, the court considers "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996).  The Second Circuit "has held that a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in *Kimmell*.'"  *Eternity Global Master Fund Ltd.*, 375 F.3d at 188

(quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).  As such, where a special relationship is not pleaded, "and the allegations with respect ot the other *Kimmell* factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." *Id.*  In the instant case, the proposed negligent misrepresentation fails to adequately plead the requisite special relationship, as well as that the person responsible for the misrepresentation "held or appeared to hold unique or special expertise," or "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*

Specifically, not one statement of misrepresentation is attributed to any particular individual; rather, Plaintiffs allege the misrepresentations that "wages would be paid legally and in accordance with [Defendants'] obligations pursuant to applicable state laws" are made either in Defendants' "corporate publications" or "through statements of [Defendants'] agents. . . ," Proposed Second Amended Complaint ¶ 86, in statements in "employee manuals and policy manuals," "corporate publications," and "corporate documents" that Plaintiffs "would be paid for all hours worked including those worked both under and in excess of forty in a work week," and for work performed "during their lunch breaks." *Id.* ¶¶ 87-89.  Not only are these "sparsely pled" allegations insufficient to establish the requisite special relationship for a negligent misrepresentation claim, but neither of the other two elements is pleaded, *i.e.*, that the person responsible for the misrepresentation "held or appeared to hold unique or special expertise," or that "the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Eternity Global Master Fund Ltd.*, 375 F.3d at 188.  Moreover, the allegations in the Proposed Second Amended Complaint fail to provide the detail Judge

Skretny found lacking in the previously dismissed action, 08-CV-948S, where the negligent misrepresentation claim was dismissed on the basis that the Plaintiffs "have alleged, at best, an ordinary employer-employee relationship, and it is not even clear from the Complaint which Plaintiff is employed by which Defendant."  January 17, 2012 D&O at 20 (citing *Kwon v. Yun*, 606 F.Supp.2d 344, 356-57 (S.D.N.Y. 2009) ("courts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation. . . ."); and *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F.Supp.2d 497, 534-35 (E.D.N.Y. 2011) (dismissing negligent misrepresentation claim based on non-payment of compensation where plaintiffs failed to allege anything more than an employer-employee relationship which was insufficient to establish the requisite special relationship)).  Accordingly, the negligent misrepresentation claim asserted in the Proposed Second Amended Complaint would be subject to dismissal under Rule 12(b)(6) as failing to plausibly plead a legally viable claim.  As such, Plaintiffs' Motion to Amend is DENIED with regard to the negligent misrepresentation claim.


### 2.    Conversion

Plaintiffs' proposed third claim for relief alleges a claim for conversion, asserting Defendants, in violation of New York common law, converted funds to which Plaintiffs were entitled.  Proposed Second Amended Complaint ¶¶ 119-121.  Preliminarily, the court observes that although not specifically pleaded as such, Plaintiffs have clarified that the proposed conversion claim seeks only to recover for straight-time pay. Plaintiffs' Reply - Motion to Amend at 6, 7-8.  This is consistent with Judge Skretny's

observation that "to the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their common law claims are preempted, and to the extent they are seeking straight-time wages for which no federal relief is available, they are not."  January 17, 2012 D&O at 13-14.

Defendants argue Plaintiffs' proposed conversion claim is futile because it is too vague and fails to allege, as required under New York law, that Plaintiffs had actual ownership, possession, or control of the funds before Defendants' alleged conversion. Defendants' Response - Motion to Amend at 11-12.  Plaintiffs assert the proposed conversion claim is sufficiently pleaded because under New York law, a conversion claim does not require the plaintiff have ownership, possession or control of the money before its conversion, but only that the alleged converted money was in a specific, tangible fund and that wages owed constitutes such a fund.  Plaintiffs' Reply - Motion to Amend at 6-7.

Under New York common law, conversion is defined as "the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"  *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas*, 660 N.E.2d 1121, 1126  (N.Y. 1995) (quoting *Employers' Fire Ins. Co. v. Cotten*, 156 N.E. 629, 630 (N.Y. 1927)).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (citing cases). "It is well settled that an action will lie for conversion of money where there is a specific, identifiable fund, and an obligation to return or

34

otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chemical Bank*, 559 N.Y.S.2d 704, 712 (1st Dep't. 1990).  A claim for conversion generally "does not lie for the withholding of indefinite, intangible, and incorporeal species of property."  *Martzan v. Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (4th Dep't. 1987).

"An action for conversion does not lie to enforce a mere obligation to pay money."  *Ehrlich v. Howe*, 848 F.Supp. 482, 492 (S.D.N.Y. 1994).  In at least two cases filed in District Courts within the Second Circuit, claims for conversion based on unpaid wages were dismissed under Rule 12(b)(6) because the plaintiffs were unable to allege ownership, possession or control of the money before its conversion.  *See DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 2012 WL 748760, at * 9 (E.D.N.Y. Mar. 7, 2012) (dismissing conversion claim based on unpaid wages where money out of which wages would be paid was not "specifically identified and segregated"); *Nakahata v. New York Presbyterian Healthcare System, Inc.*, 2011 WL 321186, at * 6 (S.D.N.Y. Jan. 28, 2011) (dismissing claim for conversion of unpaid wages "because New York requires the plaintiff to have ownership, possession, or control of the money before its conversion.").  Significantly, both *DeSilva* and *Nakahata* address similar complaints regarding nonpayment of wages to healthcare workers who worked during or through scheduled breaks and meal times, and the plaintiffs in those actions are represented by the same attorneys who represent Plaintiffs in the instant action.

Similarly, in the instant case, Plaintiffs have failed to specifically identify and segregate the funds out of which their alleged unpaid wages were to be paid.  As such, their proposed conversion claim fails to state a claim for which relief can be granted,

such that permitting it to be filed would be futile.  Plaintiffs' Motion to Amend is,
therefore, DENIED as to the conversion claim.

## C.    Costs of Previous Action

Defendants, alternatively, request that if Plaintiffs are permitted to file the
Second Amended Complaint, such permission should be conditioned on Plaintiffs' first
paying Defendants the costs, including attorneys' fees, incurred in connection with
defending against the negligent misrepresentation and conversion claims in the
previous actions, as permitted under Rule 41(d).  Defendants' Response - Motion to
Amend at 13-16.  Plaintiffs argue in opposition that no such award of costs to
Defendants should be made because although Plaintiffs initially voluntarily dismissed
the negligent misrepresentation and conversion claims from the instant action, the
claims were involuntarily dismissed after Defendants removed the state court actions to
this court, where Defendants then moved to have the actions dismissed.  Plaintiffs'
Reply - Motion to Amend at 8-10.  Plaintiffs further maintain that attorneys' fees are not
among the costs recoverable under Rule 41(d), and that Defendants' request for
attorneys' fees is duplicative of their request for attorneys fees made in 08-CV-950 and
08-CV-951.  *Id.*

Because the court is denying Plaintiff's Motion to Amend, Defendants' request
for costs under Rule 41(d) is DISMISSED as moot.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Compel (Doc. No. 293) is

GRANTED in part and DENIED in part; Plaintiff's' Cross-Motion for a Protective Order

(Doc. No. 297) is DENIED; and Plaintiff's Motion to file an Amended Complaint (Doc.

No. 299) is DENIED.  Defendants' request for costs pursuant to Rule 41(d) is

DISMISSED as moot.  Defendants shall file an affidavit of costs, including attorney's

fees, incurred in connection with the Motion to Compel **within ten (10) days of receipt

of this Decision and Order**.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     July <u>19</u>, 2012
           Buffalo, New York