UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAIL HINTERBERGER, *et al.*,                                    **DECISION**
                                                                   **and**
                                    Plaintiffs,                  **ORDER**

            v.
                                                              **08-CV-380S(F)**

CATHOLIC HEALTH SYSTEM, INC., *et al.*,

                                    Defendants.
_____

APPEARANCES:          THOMAS & SOLOMON, LLP
                      Attorneys for Plaintiffs
                      MICHAEL J. LINGLE,
                      SARAH E. CRESSMAN, of Counsel
                      693 East Avenue
                      Rochester, New York   14607

                      NIXON PEABODY, LLP
                      Attorneys for Defendants
                      TODD R. SHINAMAN,
                      MARK A. MOLLOY, of Counsel
                      40 Fountain Plaza, Suite 500
                      Buffalo, New York   14202


        By papers filed August 16, 2012, Plaintiffs move for reconsideration of the court's

Decision and Order filed July 19, 2012 (Doc. No. 328) ("D&O") granting in part and

denying in part Defendants' motion to compel and to dismiss (Doc. No. 293) filed

January 23, 2012 ("Defendants' motion to compel"), denying Plaintiffs' cross-motion filed

February 13, 2012 (Doc. No. 297) for a protective order, and granting Defendants' costs

incurred by Defendants in connection with Defendants' motion to compel (Doc. No. 338)

("Plaintiffs' motion for reconsideration").  Plaintiffs' motion for reconsideration was

accompanied by a Memorandum of Law in Support of Plaintiffs' Motion for

Reconsideration/Clarification and for a Stay (Doc. No. 338-1) ("Plaintiffs' Memorandum")

together with the Affirmation of Sarah Cressman, Esq. (Doc. No. 338-2) ("Second

Cressman Affirmation") and Exhibit A ("Plaintiffs' Exh. A").[1]

Defendants opposed Plaintiffs' motion for reconsideration on August 13 2012 by

filing Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Order

Compelling Discovery From Non-Responsive Opt-In Plaintiffs ("Defendants'

Opposition"), together with Exhibit A ("Defendants' Exh. A").[2]  Plaintiffs filed, on

September 7, 2012, a Reply Memorandum of Law In Further Support Of Plaintiffs'

Motion For Reconsideration/Clarification And For A Stay (Doc. No. 348) ("Plaintiffs'

Reply").

## DECISION

The standard for granting a motion for reconsideration, is strict.  *Shrader v. CSX*

*Transporation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration "will

generally be denied unless the moving party can point to controlling decisions or

important facts that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court."  *Id*.  Nor is a

motion for reconsideration intended to be a "second bite at the apple" for a party

dissatisfied with the court's ruling by "relitigating old issues, presenting the case under

---

[1]  Plaintiffs' Exhibit A is a transcript of a January 11, 2012 pretrial discovery status conference with the parties conducted before the court.

[2]  Defendants' Exhibit A is a list of the names of the 48 opt-in Plaintiffs who according to Defendants provided responses to Defendants' discovery requests which were served on Defendants.

new theories, [or] securing a rehearing on the merits . . .." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).  Generally, reconsideration is justified only where there exists "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790).  *See also Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999) (reconsideration requires demonstrated failure to apply controlling precedent).  Whether to grant a motion for reconsideration lies within the sound discretion of the court.  *New York v. Holiday Inns, Inc.*, 1993 WL 30933, at *4 (W.D.N.Y. Jan. 28, 1993) (Skretny, J.).

In this action, Plaintiffs allege claims for unpaid regular and overtime wages owed Defendants' hourly employees including nurses and other health care professionals under the Federal Labor Standards Act ("FLSA") and New York State Wage and Hour (Labor) Laws ("state claims").  Plaintiffs' FLSA collective action has been conditionally certified; Plaintiffs' class action upon Plaintiffs' state claims has not been certified. Because Defendants employ several thousand employees potentially eligible for inclusion in the putative class action and several hundred of Defendants' employees have opted into the FLSA collective action, the parties agreed to facilitate discovery by use of a sample of 50 hourly employees randomly identified by Defendants from among the FLSA opt-in employees, as Plaintiffs, and the four representative employee-Plaintiffs were not to be considered as part of the sample.  The dispute raised by Defendants' motion to compel developed after only 40% of the opt-in Plaintiffs in the initial sample

3

group selected for discovery responded to Defendants' First Discovery Demands which included Defendants' First Set of Interrogatories and Defendants' Amended First Set of Request for Production of Documents.  D&O at 5, 9.  Particularly, as a result of Plaintiffs' efforts to obtain a total of 50 valid responses, Plaintiffs were successful in obtaining only 20 responses, which were produced to Defendants on September 14, 2011.  Plaintiffs then also reported to Defendants at that time that 15 of the initial 50 opt-in Plaintiffs ("the first sample group") who had been requested to respond had advised Plaintiffs that they instead chose to withdraw, *i.e.*, opt-out, of the lawsuit, and that another nine of the first sample group had submitted incomplete responses or were individuals whom Plaintiffs were unable to contact because of a lack of adequate contact information.  D&O at 10-11.  Thus, in order to obtain the 30 additional responses needed to reach the sample target of 50 opt-in Plaintiffs, the parties agreed that Defendants would select an additional 60 opt-in Plaintiffs provided by Defendants from the previously randomized list of all opt-in Plaintiffs from whom Plaintiffs would in turn attempt to obtain the necessary 30 additional responses.  *Id.* at 11.  This figure of 60 was selected because of the unexpected low response rate of 40% (20 of 50 responses) from the first sample group. The parties anticipated that sufficient responses would be received from the second sample group comprised of the 60 randomly selected opt-in Plaintiffs needed to reach a total of 50 responses.  *Id.* at 11-12.  On November 30, 2011, Plaintiffs served Defendants with only 26 additional responses Plaintiffs received from the second sample group.  *Id.* at 11.  However, the exact procedure for soliciting and processing responses from this second sample group was not revealed to Defendants or the court.  Unlike the

4

case with the first sample group, Plaintiffs did not indicate that with respect to the

second sample group of 60, any of these opt-in Plaintiffs had expressed a decision to

opt-out. *Id.* at 13 (citing Shinaman Declaration (Doc. No. 293-1) ¶ 60).  Thus, as of

November 30, 2011, Plaintiffs had served a total of 46 responses from the first and

second sample group of 60, four short of the 50 target number, a fact brought to

Plaintiffs' attention by Defendants.  *Id.* at 11-12; Plaintiffs' Memorandum at 5.  Further, at

that time, Plaintiffs also informed Defendants that two opt-in Plaintiffs who had provided

responses as part of the first sample group advised Plaintiffs' counsel that they wished

to opt-out or withdraw from the action thus reducing the number of valid responses to

44.  D&O at 6.  On December 9, 2011, in response to Defendants' notice, Plaintiffs

stated Plaintiffs would remedy the short-fall by "providing you [Defendants] with the

additional responses for the sample of 50."  D&O at 12 (quoting Sarah E. Cressman,

Esq. in a Dec. 2011 Email Exchange at 1).  According to Plaintiffs, the insufficiency in

Plaintiffs' responses resulted from the fact that Plaintiffs had mistakenly included the

four named Plaintiffs in Plaintiffs' production, based on Plaintiffs' erroneous belief that

the four named representative Plaintiffs were to be included in the sample, with the

result that only a total of 22 actual opt-in Plaintiffs responding from the second-sample

group of 60 opt-ins had been served on Defendants.  Affirmation of Sarah E. Cressman,

Esq. (Doc. No. 297-2) ("First Cressman Affirmation") ¶ ¶ 26-31; D&O at 11.  Plaintiffs

further represented, on December 9, 2011, that Plaintiffs would provide additional

responses to reach the target of 50 responses, First Cressman Affirmation ¶ 31, and that

Plaintiffs provided four additional responses, without specifying from which sample

group the responses were obtained, to Defendants on December 30, 2011.  First

Cressman Affirmation ¶ 32.

Plaintiffs attempt to obtain reconsideration by asserting the court committed a

"factual error" in finding that at the time of Defendants' motion, Defendants had received

44 responses from Plaintiffs.  Plaintiffs' Memorandum at 4 referring to D&O at 17.

Plaintiffs argue that in fact Plaintiffs had served 50 valid responses and that the court's

miscalculation prejudicially affected the court's subsequent analysis in deciding to grant

Defendants' motion to compel.  Plaintiffs' Memorandum at 1.  Plaintiffs' contention,

however, fails to consider that when Defendants moved to compel, on January 23, 2012,

two of the opt-in Plaintiffs from the first sample group who had provided responses,

served on Defendants on September 14, 2011, had later elected to opt-out of the case,

as the court noted in its computation of the number of responses received and to be

served on Defendants, D&O at 6, n. 2, and that the parties' submissions lacked clarity as

to the correct number of responses received by Defendants from the sample groups of

opt-in Plaintiffs.

For example, Defendants, in support of their motion to compel, averred that "[b]y

email dated December 30, 2011, plaintiffs' counsel finally sent additional discovery

responses.  However, the plaintiffs only sent discovery for four additional opt-ins from

the second sample of 60 randomly selected opt-ins."  Declaration of Todd Shinaman,

Esq. in Support of Motion to Compel Discovery and/or Motion to Dismiss Non-

responsive Opt-in Plaintiffs (Doc. No. 293-1), ¶ 64; Defendants' Memorandum of Law in

Support of Motion to Compel Discovery and/or Motion to Dismiss Non-responsive Opt-in

Plaintiffs (Doc. No. 294) at 6. Defendants' papers in support of Defendants' motion to compel, however, are otherwise silent as to the receipt of an additional four responses from the second sample group, and are devoid of any statement asserting that a total of 48 responses from the first and second sample groups of opt-in Plaintiffs were received, with Defendants instead focusing on their assertion that Plaintiffs, by refusing to explain their discovery collection methodology, were possibly masking the fact that Plaintiffs were forwarding to Defendants only those discovery responses favorable to Plaintiffs' claims.[3] Indeed, Defendants' Exh. A, submitted in opposition to Plaintiffs' motion for reconsideration, represents the only time Defendants straightforwardly asserted Defendants received 48 valid responses in total.

Further complicating the court's count of the number of opt-in Plaintiffs' discovery responses produced to Defendants is the exchange that occurred at the January 11, 2012 Status Conference with the undersigned, at which Defendants' counsel, Mr. Shinaman, incorrectly stated Defendants had received responses from only 24, rather than 26, of the 60 opt-in Plaintiffs in the second sample, and does not mention having received any additional responses on December 30, 2011. January 11, 2012 Tr. at 19.[4] A second version of the transcript of the January 11, 2012 status conference, filed in

---

[3] The papers submitted by the parties in connection with Defendants' motion to compel contain several ambiguities on this issue.

[4] Portions of the transcript of the January 11, 2012 Status Conference submitted in opposition to Defendants' motion to compel are attached as Exhibit C to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Discovery and/or Motion to Dismiss and in Support of Plaintiffs' Cross-motion for Protective Order (Doc. No. 297-1).

connection with Plaintiff's motion for reconsideration,[5] but not before the court on Defendants' motion to compel, contains additional dialogue establishing Shinaman later clarified that Defendants had been provided with 26, rather than 24, responses from the second sample of 60 opt-in Plaintiffs, January 11, 2012 Tr. at 21, but is devoid of any reference to Plaintiffs providing Defendants with an additional four responses on December 31, 2012.  Nor did Plaintiffs' counsel, Mr. Lingle, when questioned by the undersigned about "an unknown potential factor of 34" out of the 60 opt-in Plaintiffs in the second sample, *i.e.*, implying that only 26 responses were received from the second sample, attempt to clarify that Defendants had been provided with an additional four responses less than two weeks earlier.  *Id.* at 34.  Such lack of specificity on the actual number of responses Defendants received explains in part the discrepancy between the court's statement that Plaintiffs served 44 responses, D&O at 17, rather than the 48 responses Defendants in fact had received, a figure that, the court notes, does not appear in any of the papers filed by either party in connection with Defendants' motion to compel.  In any event, because the court correctly concluded that less than 50 valid responses were produced to Defendants from the sample groups, the court's treatment of the merits of Defendants' motion to compel based on 44 instead of 48 responses, as Defendants presently acknowledge, was not predicated on a material error of fact warranting reconsideration.

Moreover, the court did not err in finding that Plaintiffs created, intentionally or inadvertently, the impression that Plaintiffs had received more than 50 responses from

---

[5] Plaintiffs' Exh. A.

the two sample groups as a ground for this relief.  A careful examination of the record including the affirmations submitted by Plaintiffs in opposition to Defendants' motion to compel and in support of Plaintiffs' motion for reconsideration, as well as comments by Plaintiffs' lead counsel on the record, confirms the court's determination.  Specifically, a fair comparison of the First Cressman Affirmation ¶ ¶ 24-32 and the Second Cressman Affirmation ¶ ¶ 6-10 reveals that in neither affirmation do Plaintiffs demonstrate that Plaintiffs did not in fact receive more than 30 responses from the second sample of 60 opt-in designated by Defendants as replacements for the first sample group members who failed to respond, First Cressman Affirmation ¶ 21, nor do Plaintiffs negate that no responses received from that group were withheld from Defendants.

For example, in the First Cressman Affirmation, Plaintiffs state "[t]here was no reason to obtain discovery responses from all 60 opt-ins in the second sample group, or any more after 30 had been obtained, because only 30 more responses were necessary in order to reach the agreed-upon sample number of 50."  First Cressman Affirmation ¶ 25.  As is apparent from the text of this statement, however, the fact that Plaintiffs had "no reason to obtain discovery responses from 60 opt-ins . . . or any more after 30 had been obtained" does not negate that Plaintiffs, as a result of the method Plaintiffs used to solicit responses from the second sample group, either *seriatim* – one individual at a time – or from all 60 as a group solicitation, actually obtained responses of more than the target number of 30 such responses. On the other hand, in the Second Cressman Affirmation, Plaintiffs now state that "once plaintiffs' counsel obtained 30 responses from" the second sample group of 60 opt-ins, Plaintiffs "ceased efforts to obtain any

additional responses <u>from</u> <u>any</u> <u>other</u> plaintiffs on the sample list."  Second Cressman

Affirmation ¶ 6 (underlining added). But, like the First Cressman Affirmation, this

averment also does not negate that, as a result of Plaintiffs' requests, Plaintiffs in fact

received more than the target number of 30 responses thus again reinforcing the

impression created by Plaintiffs to both Defendants and the court in opposing

Defendants' motion to compel that, in the absence of a more detailed explanation as to

exactly how the second request for responses from the second opt-in group was

conducted, more than 30 responses were in fact received by Plaintiffs (or least appeared

to have be received), and that any responses in excess of 30 which Plaintiffs received,

were not (and have not to date been) produced to Defendants.  The court also notes

that although in the Second Cressman Affirmation Plaintiffs denied that "unfavorable

responses" were withheld, Second Cressman Affirmation ¶ 10, no similar disavowal

appears anywhere in the body of the First Cressman Affirmation.  In short, although in

the Second Cressman Affirmation in support of Plaintiffs' motion for reconsideration,

Plaintiffs now assert that "Plaintiffs' counsel did not cherry-pick responses from the

sample plaintiffs," Second Cressman Affirmation ¶ 3, such affirmation is the first time

such a specific averment was made to the court in connection with Defendants' motion

to compel.  Further, it is not clear from either Cressman Affirmation as to how the

requests to the sample groups were actually conducted or, for that matter, how such

responses were processed by Plaintiffs upon their receipt, illustrating again the

ambiguity confronting the court on this threshold factual issue.  Thus, even if the court

had misstated in the D&O the correct number of responses received by Defendants from

Plaintiffs as 44, D&O at 17, the court's finding that Defendants were entitled to receive all responses served by Plaintiffs from the two sample groups as a remedy for Plaintiffs' apparent withholding of some responses potentially adverse to Plaintiffs, based on the record before the court on Defendants' motion to compel, was amply warranted.

While a more forthcoming and fact specific explanation describing how the solicitation of the second sample group was conducted by Plaintiffs in Plaintiffs' initial response to Defendants' motion to compel may, in retrospect, have proved more efficacious for Plaintiffs, the foregoing discussion demonstrates that the inference drawn by Defendants and by the court – that responses were obtained and withheld by Plaintiffs –  was well founded because of Plaintiffs' opaque opposition to Defendants' demands and the court's inquiries on this question.   Therefore, the court in turn reasonably construed such opposition as corroborative of the inferences drawn by Defendants that there was a risk, if not likelihood, that Plaintiffs had received and culled the excess responses prior to producing to Defendants the 32 additional responses required (20 - 2 + 32)  to satisfy the target sample number of 50 responses by withholding responses unfavorable to Plaintiffs' case.  For example, prior to Defendants' motion to compel, at a hearing on the dispute conducted January 11, 2012, Plaintiffs' Exh. A at 23, there was the following exchange between Plaintiffs' lead counsel and the court regarding this precise question:

> The Court:   Can you at least tell us . . . how many more plaintiffs above the 26 have come over to the defendants [ ] did you receive responses from?
>
> Mr. Lingle:   Your honor, I don't think they're entitled to that information, <u>no</u>."

Plaintiffs' Exh. A at 26 (underlining added).  Further, in concluding the January 11, 2012 hearing, the court, anticipating Defendants' motion to compel, noted that it did not "quarrel with [Defendants] taking the inference . . . that [Plaintiffs] withheld information that conceivably is damaging to [Plaintiffs] case."  *Id.*  Notably, this comment was not contradicted on the record by Plaintiffs' counsel at that time.  Based on these facts, the court concluded in the D&O that in order to obviate the risk that unfavorable responses Defendants should have received were withheld and protect the integrity of the discovery process in this case, Defendants' motion to compel production of all responses received by Plaintiffs from both sample groups should be granted for the reasons stated in the D&O.  D&O at 17-18; 24.  Thus, the court finds, contrary to Plaintiffs' present assertions in support of reconsideration, that in arriving at the conclusions stated in the D&O it did not rely on a factual error material to its decision, nor did the court fail to apply controlling law favorable to Plaintiffs' position in opposition to Defendants' motion to compel.  Significantly, Plaintiffs also fail to point to any controlling authority that was overlooked by the court on the question raised by Defendants' motion to compel.

Finally, the court's determination, D&O at 18, that by agreeing that it would be necessary to seek responses from an additional 60 opt-in Plaintiffs, the parties effected a *de facto* amendment to their stipulation to use a sample of 50 opt-in Plaintiffs to provide responses to Defendants' discovery requests, because the number had proven to be insufficient to facilitate the required discovery, was not based on either an erroneous factual determination or failure to consider controlling law.  Again, Plaintiffs fail to explain how this finding was based on a misstatement of fact in the record, nor do

Plaintiffs point to any contrary controlling authority overlooked by the court relevant to this finding.  Contrary to Plaintiffs' contention, the court's direction that Plaintiffs produce all responses received by Plaintiffs from the 110 opt-in Plaintiffs randomly selected for this purpose did not establish a different sample size than as the parties had previously agreed; rather, the court reached this conclusion as one necessary to resolve fully Defendants' motion and fashion a reasonable remedy in response to the particular problem presented.  As such, there is no need to clarify the D&O or stay Plaintiffs' compliance as Plaintiffs also request.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for reconsideration, clarification and a stay (Doc. No. 338) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: October 9, 2012
        Buffalo, New York